HOEKSTRA, J.
In this medical marijuana case, we granted the prosecution’s application for leave to appeal to consider whether questions of fact regarding the applicability of immunity under § 4 of the Michigan Medical *569 Marijuana Act (MMMA), MCL 333.26421 et seq.,[1] must be resolved by the trial court or by a jury. Unpublished order of the Court of Appeals, entered January 8, 2013 (Docket No. 312065). In this context, the question of whether Michigan residency is a prerequisite to valid possession of a registiy identification card under the MMMA also arises. Because we hold that residency is a prerequisite to valid possession of a registry identification card and that questions of fact regarding the applicability of § 4 immunity must be resolved by the trial court, we vacate the trial court’s order and remand for further proceedings.
On January 28, 2011, Baroda Lake Township Police Officer John Hopkins stopped a vehicle being driven by defendant after observing the vehicle weave in and out of the fast lane and change lanes without signaling. During the stop, Officer Hopkins detected the odor of marijuana emanating from defendant’s vehicle. He requested permission to search the vehicle, and defendant consented. When the trunk of the vehicle was opened, he instantly detected a strong odor of marijuana. In a black backpack located in the trunk, Officer Hopkins found eight individual baggies containing various amounts of marijuana totaling about five ounces and papers with names and numbers recorded on them, which Officer Hopkins believed to be drug records. Also in the backpack were patient and caregiver registry identification cards belonging to defendant, Salman Ali, and others. Defendant was questioned by Officer Hopkins about the marijuana at the scene of the traffic stop, and while being transported to and at the police station. *570 However, defendant was released without being charged after the questioning was completed.
On November 1, 2011, defendant was arrested and charged with possession of marijuana with intent to deliver less than 50 grams of marijuana, MCL 333.7401(2) (a) (iv). Before the preliminary examination, defendant moved for dismissal of the charges pursuant to the immunity provided by § 4 of the MMMA, MCL 333.26424, and the prosecution moved in limine to preclude defendant from asserting § 4 immunity. After conducting a contested preliminary examination, the district court issued a written opinion and order denying defendant’s motion to dismiss and bound defendant over to the circuit court on the possession-with-intent-to-deliver charge. In a separate opinion and order, the district court denied the prosecution’s motion in limine to preclude defendant from asserting § 4 immunity. In that opinion, the district court also addressed the prosecution’s argument that defendant is not entitled to the MMMA protections because she was not a Michigan resident at the time she applied for a registry identification card or at the time that she was found to be in possession of marijuana. The district court held that residency in Michigan is required to qualify as a cardholder under the MMMA. However, it denied the prosecution’s motion because it concluded that defendant had “an unexpired Michigan Medical Marihuana Registration Card when she was stopped by police on January 28, 2011,” and defendant was entitled to claim § 4 immunity.
After the bindover to the circuit court, the prosecution filed a renewed motion in limine to preclude defendant from asserting § 4 immunity or an affirmative defense under § 8 at trial, and requested that the trial court conduct an evidentiary hearing on the lim *571 ited question of whether defendant was a Michigan resident at the time she applied for her registry identification card under the MMMA.[2] Following an eviden-tiary hearing, the trial court took the matter under advisement, and in a written opinion and order denied the prosecution’s renewed motion to preclude defendant from asserting § 4 immunity. The trial court found that the evidence produced at the preliminary examination and the July 2012 evidentiary hearing was insufficient to allow it to determine, as a matter of law, whether defendant was entitled to the immunity provided by § 4. Specifically, the trial court found that there were two disputed questions of fact, and that when questions of fact exist regarding whether a defendant is entitled to § 4 immunity, those questions must be submitted to a jury. The two questions of fact identified by the trial court were whether defendant was a Michigan resident at the time she applied for her patient and caregiver registry identification cards and whether the “true purpose” for which defendant possessed the marijuana was medical use in light of the fact that the marijuana was discovered with paperwork indicating drug trafficking.
On appeal, the prosecution argues that the trial court erred by ruling that questions of fact pertaining to the application of § 4 immunity must be submitted to a jury. Defendant agrees with the prosecution, but in addition maintains that the trial court erred by finding that residency is a prerequisite to the valid possession of registry identification cards.
*572 We review de novo questions regarding the interpretation of the MMMA. People v Kolanek, 491 Mich 382, 393; 817 NW2d 528 (2012). The intent of the electors, rather than the Legislature, governs the interpretation of voter-initiated statutes like the MMMA. Id. at 397. A statute must be interpreted on the basis of its plain language, and the words of the MMMA must be given their ordinary and plain meaning as would have been understood by the electorate. Id.
Section 4 of the MMMA provides in relevant part:
(a) A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner,.. . for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount.
(b) A primary caregiver who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the department’s registration process with the medical use of marihuana in accordance with this act, provided that the primary caregiver possesses an amount of marihuana that does not exceed:
(1) 2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the department’s registration process; and
*573 (2) for each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility; and
(3) any incidental amount of seeds, stalks, and unusable roots. [MCL 333.26424.]
Sections 4(a) and 4(b) of the MMMA contain parallel immunity provisions that grant registered qualifying patients and registered primary caregivers broad immunity from arrest, criminal prosecution, civil penalties, and disciplinary actions. People v Bylsma, 493 Mich 17, 28; 825 NW2d 543 (2012); Kolanek, 491 Mich at 394-395. While the MMMA does not address whether factual questions arising in the application of § 4 immunity should be resolved by the trial court during pretrial proceedings or by a jury, our Supreme Court has instructed that the requirements of § 4 “are intended to encourage patients to register with the state and comply with the act in order to avoid arrest and the initiation of charges and obtain protection for other rights and privileges.” Kolanek, 491 Mich at 403. Further, our Supreme Court directed courts to consider “well-established principles of criminal procedure” when deciding a motion to dismiss asserting the § 8 affirmative defense. Id. at 411.
Because we see no reason to distinguish § 8 and § 4 in terms of reliance on “well-established principles of criminal procedure” as instructed by Kolanek, we look to comparable Michigan law for guidance in resolving the § 4 issue presented in this case.
In making its decision, the trial court relied on the long-recognized principle in Michigan caselaw that questions of law in criminal cases are for the trial judge to decide, whereas questions of fact are for the jury. Id.; People v Artman, 218 Mich App 236, 239; 553 NW2d 673 *574 (1996); People v Wright, 161 Mich App 682, 685; 411 NW2d 826 (1987). While this is a well-established principle, it is not absolute. In certain instances, Michigan criminal law clearly places the fact-finding function with the trial court judge. See, e.g., People v Sexton (After Remand), 461 Mich 746, 752; 609 NW2d 822 (2000) (affirming this Court’s decision, which recognized that the trial court must make factual findings when it determines whether a defendant’s statement was voluntary); People v Juillet, 439 Mich 34, 61; 475 NW2d 786 (1991) (holding that the trial court must make findings of fact in pretrial proceedings to determine whether a defendant was entrapped); People v Chism, 390 Mich 104, 123; 211 NW2d 193 (1973) (finding no clear error when the trial judge found that the consent to search was valid); People v Hyde, 285 Mich App 428, 436; 775 NW2d 833 (2009) (recognizing that the trial court must make factual findings when it rules on a motion to suppress physical evidence); People v Frohriep, 247 Mich App 692, 695-696; 637 NW2d 562 (2001) (recognizing that the trial court makes factual findings when it determines whether a consent to search was valid); People v Parker, 230 Mich App 337, 339-341; 584 NW2d 336 (1998) (recognizing that the judge makes the factual findings in conjunction with a decision on a motion to suppress evidence); People v Dalton, 155 Mich App 591, 598; 400 NW2d 689 (1986) (holding that the lawfulness of an arrest is a question of law to be decided by the trial court unless the lawfulness of the arrest is an element of a criminal offense in which case it becomes a question of fact for the jury). Thus, the “well-established principles of criminal procedure” suggest that under certain circumstances, it is necessary for the trial court to make factual determinations before trial. Kolanek, 491 Mich at 411. Accord *575 ingly, the question becomes whether § 4 immunity fact-finding is most appropriately placed with the jury or the trial court.
In answering this question, we find the reasoning for assigning the fact-finding in entrapment cases to the trial court particularly informative. It is well established in Michigan that the trial court judge makes factual findings to determine whether a defendant has proved that he or she was entrapped. Juillet, 439 Mich at 61; People v D’Angelo, 401 Mich 167, 176-177; 257 NW2d 655 (1977). In Juillet, 439 Mich at 52, the Court explained that “[t]he overall purpose of the entrapment defense is to deter the corruptive use of governmental authority by invalidating convictions that result from law enforcement efforts that have as their effect the instigation or manufacture of a new crime by one who would not otherwise have been so disposed.” Entrapment “is not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime that justify barring the defendant’s prosecution.” Id. Thus, when a trial court determines that a defendant was entrapped, the charges against the defendant must be dismissed, regardless of whether the defendant actually committed a crime. Further, when entrapment is claimed, the trial court must conduct an evidentiary hearing, and the defendant bears the burden of proving by a preponderance of the evidence that he or she was entrapped. Id. at 61. “[T]he trial court must make specific findings of fact on the entrapment issue, and its decision will be reviewed under the clearly erroneous standard.” Id.
The decision that the trial court, and not a jury, should make any factual determination regarding the existence of entrapment was based in part on our Supreme Court’s observation that resolution of the *576 entrapment issue by the trial court “will provide, through an accumulation of cases, a body of precedent which will stand as a point of reference both for law enforcement officials and the courts.” D’Angelo, 401 Mich at 175. Moreover, the Court noted that there is a concern that if such a question is left to a jury, the evidence indicating a defendant’s guilt will “infect” the jury’s ability to determine whether the defense of entrapment is applicable. Id.
Similar to entrapment, § 4 immunity does not negate any element of a marijuana-related crime; rather, it provides immunity from arrest, prosecution, or penalty to marijuana users who meet certain delineated requirements.[3] MCL 333.26424. Like a defendant who proves entrapment, a defendant is entitled to dismissal of any marijuana-related charges if he or she proves that he or she qualifies for § 4 immunity under the MMMA. See id.; People v Tuttle, 493 Mich 950; 828 NW2d 375 (2013); People v Hartwick, 493 Mich 950; 828 NW2d 48 (2013). Moreover, the reasoning behind entrapment principles is also applicable to § 4 immunity because a body of precedent to guide future police conduct is important to the application of § 4 immunity, which is meant to protect against arrest, as well as prosecution and penalty. Also, as is likely in entrapment cases, the knowledge of admitted marijuana possession may “infect” a jury’s ability to determine whether § 4 immunity is applicable in a given situation. These similarities weigh in favor of holding that § 4 fact-finding should be done by the trial court judge.
*577 Further, the language of § 4 itself provides an additional basis for holding that the question of immunity ought to be decided by the trial court judge. MCL 333.26424(a) and (b) provide that both qualifying patients and primary caregivers who have been issued and possess a registry identification card “shall not be subject to arrest, prosecution, or penalty in any manner.” For this protection to have meaningful effect, the immunity must be afforded at the earliest possible stages of any investigation or subsequent court proceedings. The delay occasioned by having to wait for a jury to be impaneled to resolve factual questions would hinder the implementation of § 4 immunity. Assigning the trial court the duty of determining factual questions regarding the applicability of § 4 immunity will result in a more expeditious resolution of immunity claims.
In sum, relying on similar well-established principles of criminal law, and in particular, the comparison to entrapment, and on the language of the MMMA itself, we hold that § 4 immunity fact-finding is a question for the trial court judge to decide. Accordingly, the trial court’s decision finding that § 4 immunity fact-finding is a question for the jury is reversed and the case is remanded for further proceedings where the judge shall determine whether defendant is entitled to § 4 immunity.[4]
Next, we address defendant’s claim that the trial court erred by holding that Michigan residency is a prerequisite to valid possession of a registry identification card.
*578 We review de novo questions of law such as those involving statutory interpretation. Kolanek, 491 Mich at 393. “We must give the words of the MMMA their ordinary and plain meaning as would have been understood by the electorate.” Id. at 397. Interpretation of the MMMA “is guided by the traditional principles of statutory construction.” Id. Thus, words in a statute must be read harmoniously to give effect to the statute as a whole, and “every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory.” People v Peltola, 489 Mich 174, 181; 803 NW2d 140 (2011) (quotation marks and citation omitted).
The MMMA does not directly address residency. However, § 4(j) of the act does contain a provision allowing a “visiting qualifying patient” to use medical marijuana in conformance with the MMMA while visiting the state of Michigan.[5] A “visiting qualifying patient” is defined by the act to be “a patient who is not a resident of this state or who has been a resident of this state for less than 30 days.” MCL 333.26423(Z). Moreover, MCL 333.26422 lists several other states that do not penalize the medical use of marijuana, and notes that “Michigan joins in this effort for the health and welfare of its citizens.” (Emphasis added.)
In light of the reference to Michigan citizens, and the provisions regarding a visiting qualifying patient in the MMMA, we agree with the trial court that Michigan *579 residency is a prerequisite to the issuance and valid possession of a registry identification card. If the MMMA were read not to require Michigan residency, there would be no reason to specifically refer to Michigan citizens or to include a provision regarding medical use of marijuana by visitors to Michigan. See Peltola, 489 Mich at 181 (stating that every word in a statute should be given meaning). Thus, we affirm the trial court’s conclusion that Michigan residency is a prerequisite to valid possession of a registry identification card.[6]
Defendant also raises several issues on cross-appeal. First, defendant argues that the trial court erred by failing to exclude all her statements to the police because she maintains that she was questioned in violation of Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). We disagree.
Defendant moved for suppression of her statements to police during the traffic stop, while being transported to the police station, and during her interview with police at the station. The trial court ruled that defendant was in custody once Officer Hopkins began transporting her to the police station and on that basis suppressed all statements made during that transport before she was read and waived her Miranda rights at the police station. The trial court found defendant was not in custody during the traffic stop or while she was in the officer’s police cruiser at the scene of the traffic stop, and that her subsequent waiver of rights was valid.
*580 It is well settled that Miranda warnings need only be given when a person is subject to custodial interrogation. People v Coomer, 245 Mich App 206, 219; 627 NW2d 612 (2001). Whether a defendant is in custody for purposes of Miranda at the time of an interrogation is determined by looking at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he or she was free to leave. People v Roark, 214 Mich App 421, 423; 543 NW2d 23 (1995).
We agree with the trial court that in this case defendant was not in custody for purposes of Miranda during the traffic stop or while she was waiting in the police cruiser during the search of her vehicle. Officer Hopkins testified that he had asked defendant and her children to sit in his police cruiser for their own safety; a routine traffic stop does not generally involve taking a person into custody. People v Burton, 252 Mich App 130, 138-139; 651 NW2d 143 (2002). Moreover, Officer Hopkins testified that defendant was not handcuffed and was informed that she was not under arrest. Therefore, under the totality of the circumstances, a reasonable person in defendant’s position would have believed she was free to leave. Accordingly, we affirm the trial court’s decision not to suppress those statements.
Next, defendant argues that she is entitled to dismissal of the charges because the police destroyed the recording of her roadside stop, and that the destruction amounted to a violation of due process and prevented her from presenting a meaningful defense. We disagree.
Absent intentional suppression or a showing of bad faith, a loss of evidence that occurs before a defense request for its production does not require reversal. People v Johnson, 197 Mich App 362, 365; 494 NW2d *581 873 (1992). The defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith. Id.
In this case, Officer Hopkins testified that it was department policy to automatically destroy all traffic-stop recordings six months after the date of the traffic stop. Defendant was stopped on January 28, 2011, and was not arrested until November 2011. Moreover, defendant failed to present any evidence of bad faith on the part of the police department and failed to provide any evidence that the recording would have been exculpatory. Accordingly, we conclude that the record does not support defendant’s claims, and the trial court did not abuse its discretion by denying defendant’s motion to dismiss.[7]
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
Murphy, C.J., and Fitzgerald, J., concurred with Hoekstra, J.

 Although the statutory provisions at issue refer to “marihuana,” by convention this Court uses the more common spelling “marijuana” in its opinions. Section 4 of the MMMA was amended by 2012 PA 512, after defendant’s arrest and bindover on the charged offense. Although the amendment language does not affect our holding, all references and quotations are to the 2008 version of § 4.

 We note that the same judge presided over all proceedings in this case because the Michigan Supreme Court has consolidated and merged the Berrien County District Court, Probate Court and Circuit Court into a single trial court. We further note that defendant filed several motions that were also considered during the evidentiary hearing held on July 20, 2012 that are the subject of defendant’s cross appeal.

 To qualify for § 4 immunity, one must prove that he or she “(1) is a qualifying patient, (2) who has been issued and possesses a registry identification card, and (3) possesses less than 2.5 ounces of usable marijuana,” and that the marijuana was for medical use. People v Nicholson, 297 Mich App 191, 198; 822 NW2d 284 (2012).

 We decline to consider the merits of defendant’s claim to § 4 immunity in the first instance on appeal as urged by defendant because, as discussed, it is the duty of the trial court to first make the necessary factual findings regarding the applicability of § 4 immunity.

 MCL 333.26424(j) provides:
A registry identification card, or its equivalent, that is issued under the laws of another state, district, territory, commonwealth, or insular possession of the United States that allows the medical use of marihuana by a visiting qualifying patient, or to allow a person to assist with a visiting qualifying patient’s medical use of marihuana, shall have the same force and effect as a registry identification card issued by the department.

 While it does not affect our analysis in this case, we note that MCL 333.26426(a), which sets forth the requirements for issuance of a registry identification card, was amended by 2012 PA 514, effective April 1, 2013, to specifically require proof of Michigan residency before the issuance of a registry identification card.

 Defendant also challenges the trial court’s conclusion that she failed to present evidence from which a reasonable jury could conclude that the defendant satisfied the elements of the § 8 affirmative defense. This issue is premature in light of our holding that the trial court must resolve defendant’s § 4 immunity claim. However, we question the trial court’s conclusion that defendant was barred from asserting a § 8 defense during trial because she failed to present evidence to raise a question of fact in regard to § 8(a)(2) in light of the number of patient and registry identification cards in her possession and the fact that defendant possessed an amount of marijuana that would he permitted generally by the MMMA.