*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NEW 555 COMMERCIAL, LCC, NEW 555 RESIDENTIAL, LCC, MANORWOOD PROPERTIES, LCC, and ASSOCIATES OF 555, LP,

UNPUBLISHED
August 22, 2024

Petitioners-Appellants,

v

No. 364563
Tax Tribunal
LC No. 22-000772-TT

CITY OF BIRMINGHAM,

Respondent-Appellee.

Before: REDFORD, P.J., and GADOLA, C.J., and RIORDAN, J.

PER CURIAM.

This litigation involves a special assessment levied by respondent, City of Birmingham (the city), on properties owned by petitioners, New 555 Commercial, LLC, New 555 Residential, LLC, Manorwood Properties, LLC, and Associates of 555, LP. Petitioners appeal an order issued by the Michigan Tax Tribunal (the Tribunal) denying their motion for summary disposition brought under MCR 2.116(C)(10). After this Court denied petitioners' application for leave to appeal,[1] our Supreme Court, in lieu of granting leave, remanded the case to this Court for consideration as on leave granted.[2] The Tribunal, applying a common-law presumption that the special assessment was valid, ruled that a genuine issue of material fact existed regarding whether petitioners' real estate was benefited by the city's construction project and the extent of any benefit. The Tribunal rejected arguments that the city's legislative body—the city commission—was required to conduct a specific benefits analysis or make findings supporting its determination that the properties were benefited before confirming the special assessment. On appeal, petitioners argue that the Tribunal erred in its ruling because, as a matter of law, the city commission failed

---

[1] *New 555 Commercial, LLC v City of Birmingham*, unpublished order of the Court of Appeals, entered July 7, 2023 (Docket No. 364563).

[2] *New 555 Commercial, LLC v City of Birmingham*, 513 Mich 898 (2023).

to comply with the city's own ordinances by not making a pre-assessment determination that the properties were benefited by an increase in market value reasonably proportionate to the amount of the special assessment. Petitioners further contend that a benefits analysis does not entail a mere apportionment of the project's costs and that the Tribunal failed to even consider the relevant ordinances, let alone analyze them in any serious manner. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Petitioners are related entities, and this matter concerns commercial properties owned by petitioners that are comprised of two buildings and a vacant lot on three contiguous parcels located in the city (hereafter the "555 Complex"). The city commission confirmed a special assessment roll to fund a sidewalk and streetscape reconstruction project bordering the 555 Complex.[3] Petitioners received a notice from the city informing them that the city commission had assessed a total amount of $453,832.83 against the 555 Complex for the sidewalk and streetscape improvements. We note that the project entailed eliminating 11 out of the 30 parking spaces adjoining the 555 Complex.

Petitioners filed a petition in the Tribunal, alleging that the special assessment was invalid because the sidewalk and streetscape project did not confer any financial benefit on the 555 Complex. Petitioners moved for summary disposition under MCR 2.116(C)(10), contending that, in violation of its ordinances, the city commission made no determination before confirming the special assessment roll that the project would confer a special benefit on the 555 Complex by increasing its market value in reasonable proportion to the amount of the special assessment. In response, the city maintained that it had complied with its ordinances and state law in confirming the special assessment roll and that petitioners failed to submit any evidence rebutting the presumption of validity; therefore, under MCR 2.116(I)(2), the city rather than petitioners was entitled to summary disposition.

The Tribunal denied petitioners' motion for summary disposition because they failed to meet their burden of proof by providing evidence rebutting the common-law presumption that the special assessment was valid. The Tribunal concluded that the city commission had no obligation to conduct a specific benefits analysis or make findings that the 555 Complex was benefited before levying the special assessment. The Tribunal similarly denied the city's request for summary disposition, concluding that there remained genuine issues of material fact regarding whether the sidewalk and streetscape project conferred a special benefit on the 555 Complex and, if so, the extent of the benefit.[4] We discuss additional facts in the analysis section of this opinion, as necessary to resolve the appeal.

---

[3] The improvements at issue were part of the third and final phase of a massive construction project that involved upgrades to or the replacement of sewers, utilities, lead service lines, water lines, and roadways in the area of South Old Woodward Road.

[4] The Tribunal noted that discovery remained open. We note that the city has not filed a cross-appeal, nor does it argue that the Tribunal erred by denying its request for summary disposition.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

The Tribunal has exclusive and original jurisdiction over "[a] proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, *special assessments*, allocation, or equalization, under the property tax laws of this state." (Emphasis added.) In *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010), our Supreme Court discussed the relevant standards of review:

> The standard of review of Tax Tribunal cases is multifaceted. If fraud is not claimed, this Court reviews the Tax Tribunal's decision for misapplication of the law or adoption of a wrong principle. We deem the Tax Tribunal's factual findings conclusive if they are supported by "competent, material, and substantial evidence on the whole record." But when statutory interpretation is involved, this Court reviews the Tax Tribunal's decision de novo. We also review de novo the grant or denial of a motion for summary disposition. [Citations omitted.]

In *Bonner v City of Brighton*, 495 Mich 209, 221-222; 848 NW2d 380 (2014), the Supreme Court discussed the review of the ordinance language:

> Further, because ordinances are treated as statutes for purposes of interpretation and review, we also review de novo the interpretation and application of a municipal ordinance. Since the rules governing statutory interpretation apply with equal force to a municipal ordinance, the goal of construction and interpretation of an ordinance is to discern and give effect to the intent of the legislative body. The most reliable evidence of that intent is the language of the ordinance itself and, therefore, the words used in an ordinance must be given their plain and ordinary meanings. [Citations omitted.]

### B. SPECIAL ASSESSMENTS – LEGAL PRINCIPLES

While resembling a tax, a special assessment is not a tax; instead, it is "a specific levy designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area." *Kane v Williamstown Twp*, 301 Mich App 582, 586; 836 NW2d 868 (2013) (quotation marks and citation omitted); see also *City of Highland Park v State Land Bank Auth*, 340 Mich App 593, 614; 986 NW2d 638 (2022) ("In contrast to a tax, a special assessment is imposed to defray the costs of specific local improvements, rather than to raise revenue for general governmental purposes.") (citation omitted). Special assessments are "sustained upon the theory that the value of the property in the special assessment district is enhanced by the improvement for which the assessment is made." *Kadzban v City of Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993) (quotation marks and citations omitted).

"[M]unicipalities are not free to levy special assessments without regard for the amount of benefit that inures to the assessed property. For a special assessment to be valid, there must be some proportionality between the amount of the special assessment and the benefits derived therefrom." *Id*. at 501-502 (quotation marks and citation omitted). "In the absence of such a

relationship, the special assessment would be akin to the taking of property without due process of law." *Id*. at 502 (quotation marks and citation omitted). In *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 493; 597 NW2d 858 (1999), this Court restated, in part, our Supreme Court's holding in *Kadzban*, articulating a two-prong test for evaluating the validity of a special assessment:

> Two requirements must be met in order for a special assessment to be deemed valid: (1) the improvement funded by the special assessment must confer a special benefit upon the assessed properties beyond that provided to the community as a whole, and (2) the amount of [the] special assessment must be reasonably proportionate to the benefits derived from the improvement. [Citations omitted.]

With respect to the first requirement, "[i]n order for an improvement to be deemed to have conferred a 'special benefit,' it must cause an increase in the market value of the land specially assessed." *Id*. In regard to the second requirement, "[a] determination of increased market value is necessary to determine whether the benefit is proportionate to the cost incurred." *Id*. It is a "well-settled principle that municipal decisions regarding special assessments are presumed to be valid," and "the decisions of municipal officers regarding special assessments generally should be upheld." *Kadzban*, 442 Mich at 502 (quotation marks and citation omitted). When courts review the validity of special assessments, they are not tasked with determining whether there is a rigid dollar-for-dollar balance between the value of the benefit and the amount of the special assessment. *Id*. "Rather, a special assessment will be declared invalid only when the party challenging the assessment demonstrates that there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements." *Id*. (quotation marks and citation omitted).

The questions whether and how much the value of property has increased because of an improvement are factual, which must be resolved on the basis of the evidence presented by the parties. *Id*. Accordingly, the pertinent findings are made by the trier of fact, i.e., the Tribunal. *Id*. Because of the presumption of validity, "to effectively challenge special assessments, plaintiffs, at a minimum, must present credible evidence to rebut the presumption that the assessments are valid." *Id*. at 505. Absent such evidence, the Tribunal has no basis to strike down a special assessment. *Id*. If a plaintiff presents evidence that effectively rebuts the presumption of validity, the burden going forward with evidence shifts to the municipality. *Id*. at 505 n 5. "At that point, the city must . . . present evidence proving that the assessments are reasonably proportionate in order to sustain the assessments." *Id*.[5]

---

[5] The *Kadzban* Court noted:

> Street and utility improvements are common bases for special assessments. In numerous instances, abutting property has been specially assessed the costs of paving a road or installing a sewer system. However, not every street improvement primarily benefits the property that abuts the street. Indeed, in some instances, an

-4-

C. DISCUSSION AND RESOLUTION

Without taking into consideration the city's ordinances, we would easily conclude that the Tribunal did not err by denying petitioners' motion for summary disposition because they did not present any evidence concerning the impact—or lack thereof—that the sidewalk and streetscape project had on the market value of the 555 Complex as necessary to rebut the presumption of validity. But of course, we must examine the pertinent city ordinances because petitioners' stance is premised entirely on the city commission's alleged failure to comply with the ordinances. We conclude that petitioners' ordinance-based arguments ultimately do not change the equation because the city commission complied with the city's ordinances and was thus entitled to the presumption of validity. Accordingly, the Tribunal did not err by denying petitioners' motion for summary disposition.

The presumption of validity or proportionality is a creature of the common law and dates back to 1894 in Michigan. See *In re Eight & One-Half Mile Relief Drain*, 369 Mich 641, 649; 120 NW2d 789 (1963) ("The presumption, declared and redeclared many times since, appeared first in *Powers v Grand Rapids*, 98 Mich 393, 397; 57 NW 250 [1894]."). In *Powers*, 98 Mich at 397, our Supreme Court observed:

> The presumption is that, in making the district and the assessment, the officers of the municipality acted in good faith, and have correctly and faithfully exercised the discretion reposed in them. In such case, where mistake or abuse of discretion is not manifest or demonstrable, the determination of the municipal officers in whom such discretion is vested is conclusive, and it is not reviewable by the courts. [Treatise citation omitted.]

A legislative body, which would include the city commission in this case, "may alter or abrogate the common law through its legislative authority." See *Murphy v Inman*, 509 Mich 132, 153; 983 NW2d 354 (2022).[6] Therefore, notwithstanding the common-law presumption of validity, the city commission was first required to comply with the city's relevant ordinances regarding special assessments. See also *Adams v Bay City*, 78 Mich 211, 215-216; 44 NW 138 (1889). Only after such compliance could the city take advantage of the protections offered by the common-law presumption of validity. In other words, if the city commission acted in

---

"improved" street, e.g., one that is widened from a two-lane residential street to a four-lane thoroughfare, may be a detriment to abutting property. In such instances, we have invalidated special assessments because the assessed property received no special benefit in addition to the benefit that was conferred upon the community as a whole. [*Id.* at 500-501 (citations omitted).]

[6] We note that MCL 117.4d(1)(a) states that "[e]ach city may in its charter provide . . . [f]or assessing and reassessing the costs, or a portion of the costs, of a public improvement to a special district." Chapter X, § 1, of the city's charter, authorizes the imposition of special assessments by the city commission, and § 2 authorizes the enactment of ordinances to govern special-assessment procedures.

conformance with the city's ordinances in confirming the special assessment roll, the assessment would be presumed valid and proportional, and petitioners would have been required to submit evidence to rebut the presumption. But if the city commission did not comply with the ordinances in the first instance as required to confirm a special assessment roll, the assessment cannot stand and must be vacated, without regard to the presumption of validity.

We now turn to the ordinances at issue in this case. Birmingham City Code (BCC), § 94-1, provides:

> This chapter is adopted to comply with Chapter X of the Charter for the city to provide by ordinance for a complete special assessment procedure concerning the initiation of projects, plans and specifications, estimates of cost, notice and conduct of hearings, making and confirming of assessment rolls, correction of errors, contested assessments, financing of improvements made by special assessment, collection of special assessments and interest thereon, deferral of payments due to hardship, and all other matters concerning special assessments.

"The city commission shall have the power and authority to determine that the whole or any part of the cost of any public improvement shall be defrayed by special assessments upon the property especially benefitted, consistent with the procedures set forth in this chapter." BCC, § 94-3.

BCC, § 94-8(b)(3) provides that "[i]f the commission determines to continue to proceed with [an] improvement, the commission shall adopt a resolution . . . [p]rescribing what portion of the cost of such improvement shall be paid by special assessment upon the property especially benefited, *determining what benefits will be received by affected properties* and what portion, if any, of the cost shall be paid by the city[.]" (Emphasis added.) And BCC, § 94-9, which addresses special assessment rolls, provides, in pertinent part:

> (b) The manager shall make a special assessment roll of all lots and parcels of land within the designated district to be benefited by the proposed improvement *and assess to each lot or parcel of land the amount benefited thereby*. The amount spread in each case shall be based upon the cost estimate of the city engineer.
>
> * * *
>
> (f) If, after hearing all objections and making a record of such changes as the commission deems justified, the commission determines that it is satisfied with said special assessment roll, *and that assessments are in proportion to benefits received*, it shall thereupon pass a resolution making such determination and confirming the roll. [Emphasis added.]

In our view, the key language is found in BCC, §§ 94-8(b)(3) and 94-9(f), which required, in the context of this case, that the city commission adopt a resolution determining what benefits the 555 Complex would receive as a result of the sidewalk and streetscape improvement and that the city commission make a determination that the special assessment would be in proportion to the benefits received. These provisions constituted requirements that had to be satisfied before the

special assessment roll could be confirmed. Although it is true that the common law on special assessments provides that a "benefit" to property is solely measured in terms of an increase in market value, see, e.g., *Kadzban*, 442 Mich at 501; *Dixon Rd Group v City of Novi*, 426 Mich 390, 400; 395 NW2d 211 (1986), the city's ordinances do not define the term "benefit." But an "improvement" under the ordinances is defined as "a public improvement of such a nature as to *specially benefit* any real property, any part of the cost of which is to be assessed against one or more lots or parcels of land, in proportion to the benefit derived therefrom." BCC, § 94-2 (emphasis added). Accordingly, a determination by the city that there will be an "improvement" to property necessarily correlates to a determination that the property will be "specially benefited" for purposes of the BCC.

In interrogatories sent to the city by petitioners, the following question was asked and answered:

> 3. Please explain the method that was used to determine the amount of the Special Assessment that has been allocated to the Subject Property.
>
> Answer: The City calculated the total amounts for the entire Streetscape (Streetscape costs include but are not limited to: sidewalks, planters, utilities, underground utilities, construction, sprinkler, concrete pavement, concrete sidewalk, removal, installation, concrete curb, soil, boulders, landscaping and all other elements that can be categorized in the sidewalk area of the Project which was then ("Streetscape Amount")). The total Streetscape Amount was then divided by the total the amount of the linear foot for the Project, and multiplied this amount by the linear foot the Subject Property has (This cost less 25% since the City pays 25%). Answering further, the City detailed and summarized this information at various public hearings, including March 14, 2022, and April 11, 2022. By way of further response, the City is providing information presented to the City Commission (on March 14, 2022, and April 11, 2022), and spreadsheets outlining its position, pursuant to MCR 2.309(E). The City will make available to Plaintiffs for inspection additional, non-relevant, documents concerning the entire Project at a mutually convenient date and time.

The city's answer appeared to reveal that a prospective increase in market value of the 555 Complex played no role in determining the amount of the special assessment. In the city's response to petitioners' interrogatory asking whether the city contended that the project would increase the value of the 555 Complex, the city replied, in part, that it had "not yet retained an appraiser or valuation expert to determine any increase in value." But as indicated earlier, under the city's ordinances, any "improvement" to property is considered to be a "benefit," and the ordinances do not provide or suggest that a "benefit" is measured in terms of an increase in market value.

The city submitted an affidavit executed by Scott Zielinski, the assistant city engineer, who averred that he was involved in preparing two reports for the city commission that informed the members of "the proposed special benefits, the nature of it, the improvement, the costs, the benefit derived therefrom, and the reasonable proportionality of assessing the special assessment against the affected property owners." He listed all of the attributes of the sidewalk and streetscape project,

and Zielinski noted that he had recommended approval of the special assessment because "the improvements" associated with the project increased the value of the adjacent properties. Zielinski further averred that it was his "opinion that the special assessment was proportionate to the increase in value of all of the properties[.]" He indicated that the city commission "took all of the information, my report, my spreadsheet, [the city's engineer's report], and other pertinent information, *and formulated its decision based upon these reports and our recommendation.*" (Emphasis added.) There was no documentary evidence contradicting Zielinski's affidavit; therefore, we must accept that the city commission's determination of the special assessment was formulated as claimed by Zielinski.

We have reviewed the minutes from the city commission meetings held on March 14 and April 11, 2022, that concerned the sidewalk and streetscape improvement project. During the March 14, 2022 meeting, the city commission adopted a resolution "declaring the necessity of the improvement" and special assessment district, "with special assessments levied in accordance with benefits against the properties within such assessment district[.]" It is quite evident that the city commission viewed the "improvements" or "benefits" to be the planned physical attributes of the streetscape to be constructed in phase three of the project. With respect to the April 11, 2022 meeting, at which the city commission confirmed the special assessment roll, the minutes revealed that Zielinski was present and provided information to the commission and that the commissioners confirmed the roll after making remarks finding that the project would greatly improve the aesthetics and safety of the area.

We conclude that on consideration of Zielinski's affidavit in conjunction with the minutes of the pertinent meetings, the city commission complied with the ordinances by determining that the 555 Complex would receive benefits from the project in the form of aesthetic and safety improvements created by the physical attributes of the streetscape and that the special assessment would be in proportion to or in accordance with the benefits to be received.

## III. CONCLUSION

We hold that city commission complied with the city's ordinances; therefore, the city was entitled to the presumption of validity and the Tribunal did not err by denying petitioners' motion for summary disposition given the absence of documentary evidence to overcome the presumption. The case must proceed in the Tribunal for a determination whether the special assessment was reasonably and substantially proportionate to any increase in the market value of the 555 Complex due to the sidewalk and streetscape improvements.

We affirm. Having fully prevailed on appeal, the city may tax costs under MCR 7.219.

/s/ James Robert Redford
/s/ Michael F. Gadola
/s/ Michael J. Riordan

-8-