AUSTIN *v.* VAN HORN.

1. COVENANTS—BUILDING RESTRICTIONS—CHANGE IN CHARACTER OF LOTS.

In a suit to enjoin the violation of building restrictions by the erection of a store building in a residential district, the finding of the court below that there had been no substantial change in the character of the lots involved since the restrictions were imposed, *held,* justified by the record.

2. SAME—TEMPORARY BUILDINGS NOT A VIOLATION—INJUNCTION.

Frame buildings of a temporary character used as real estate offices in the development of a subdivision do not constitute such a departure from restrictions for strictly residential purposes as to render it inequitable to enjoin the erection of a permanent brick store building.

3. SAME—RECIPROCAL NEGATIVE EASEMENTS ENFORCEABLE IN EQUITY REGARDLESS OF EXTENT OF DAMAGES.

Every lot owner in a restricted residential subdivision has a right in the nature of a negative easement in every other lot, and this is a valuable property right attached to his lot which he may enforce in equity regardless of the extent of his damages in case the right is invaded.

4. SAME—OWNER MAY NOT VIOLATE RESTRICTIONS.

Under the doctrine of reciprocal negative easements, no lot owner may use his lot in any manner forbidden to the owners of other lots.

Appeal from Wayne; Miller (Guy A.), J. Submitted October 11, 1928. (Docket No. 104, Calendar No. 34,022.) Decided January 7, 1929.

Bill by Francis Austin against Charles Van Horn and others to restrain the violation of building restrictions. From a decree dismissing the bill, plain-

tiff appeals. Reversed, and decree entered for plaintiff.

*Schmalzriedt, Frye, Granse & Frye,* for plaintiff.
*John R. Zeigler,* for defendants.

McDONALD, J. The purpose of this suit was to restrain the defendants from erecting a store building on Livernois avenue in the city of Detroit in violation of building restrictions. The property is located in Robert Oakman's Livernois and Oakman Highway subdivision which consists of 656 lots in the northeast corner of Livernois and Davison avenues. By deeds from the common grantor, all lots were restricted to residential purposes except three lots deeded to the Central Savings Bank and those fronting on La Belle avenue, which were intended for business use. The plaintiff owns lot 280 on Pasedena avenue, and the defendants own lot 408 on Livernois avenue. Both lots are restricted to residence use only. The validity of the restrictions is not questioned, but the defendants claim that there has been such a change on Livernois avenue that it would now be inequitable to enforce the restriction. On the hearing, the circuit judge entered a decree in which it was held that there had been no substantial change in the character of the lots on Livernois avenue, but that the plaintiff was not entitled to enforce the restriction because he had not shown that he would suffer any actual damages or inconvenience because of the store building.

There has been no material change on Livernois avenue since these residential restrictions were imposed. With three exceptions, all of the abutting property is still vacant. The only testimony of any change is as to traffic conditions on the street. It

has become a busy thoroughfare, but that fact would not be sufficient to render the restrictions ineffective. There are two or three frame buildings on the east side of the street which are used for real estate offices. The evidence shows that they are of a temporary character, such as are used in the development of outlying districts about rapidly growing cities. How long they have been so used does not appear. However, they do not constitute such a departure from the restrictions as is contemplated by the defendants in the erection of a permanent brick store building.

The plaintiff's lot is about 965 feet distant from the proposed building. It was the opinion of the trial court that he could not be affected by a violation of the building restrictions so far distant from his property. The restrictions imposed were according to a general plan and for the benefit of every lot in the subdivision. The plan has been uniformly followed. The record shows that as far as it has been developed the district is now made up of fine residences costing from $10,000 to $19,000. Every lot owner in the subdivision has a right to maintain this residential character. Every lot owner has a right in the nature of a negative easement in every other lot. It is a valuable property right attached to his lot which he may enforce in equity regardless of the extent of his damages in case this right is invaded. Under this doctrine of reciprocal negative easements, no lot owner can use his lot in any manner forbidden to the owners of other lots. *Sanborn v. McLean*, 233 Mich. 227.

As affecting the enforcement of this right, it is wholly immaterial to what extent any other lot owner may be injured by the forbidden use. This is because the restriction is a valuable property right

to every lot owner in the subdivision on which it is imposed. In *Allen* v. *City of Detroit,* 167 Mich. 464 (36 L. R. A. [N. S.] 890), it was said:

"Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor."

In the instant case, the plaintiff's right to maintain the restrictions is not affected by the extent of the damages he might suffer for their violation. What this court said in *Longton* v. *Stedman,* 182 Mich. 405, 414, applies here:

"The restrictions in the deeds have been violated. The amount of damages complainants have suffered is wholly immaterial. Such restrictions will be enforced. 3 Pomeroy's Equity Jurisprudence (2d Ed.), § 1342."

The decree of the circuit court is reversed, with costs to the plaintiff, and a decree granted as prayed for in the bill.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.