## OOSTERHOUSE *v.* BRUMMEL.

1. COVENANTS—RESTRICTIONS—LIGHT—AIR—VIEW.
 It is competent for people to protect their homes and their
 access to light, air and view by restrictive covenants, so long
 as restrictions imposed do not violate a sound public policy.

2. SAME—RESTRICTIONS—RESIDENCE PURPOSES.
 Restrictions for residence purposes, if clearly established by
 proper instruments are favored by definite public policy and are
 vigorously enforced by the courts by specific mandate.

3. PROPERTY—PRIVACY FOR HOMES.
 The right of privacy for homes is a valuable right.

4. SAME—DE MINIMIS NON CURAT LEX.
 The doctrine of *de minimus non curat lex,* as applied to real
 property and interests therein, must be applied with the
 utmost caution.

5. COVENANTS—INJUNCTION—SETBACK LINES—DE MINIMIS NON
 CURAT LEX.
 The doctrine of *de minimus non curat lex* will not be applied so
 as to prevent issuance of injunction against 6-foot violation
 of setback line provided by covenant in deeds to lots in a
 subdivision.

6. SAME—SETBACK LINE—VIOLATION OF RESTRICTION—PROJECTING
 ROOF AND SUPPORTS.
 Roof, running full width of garage and projecting 6 feet beyond
 setback line, together with steel supports, brick and concrete
 bases *held,* such an integral and significant part of the house
 as to constitute a violation of restrictive covenant subject to
 injunction.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 14 Am Jur, Covenants, Conditions & Restrictions § 206.
[3] 41 Am Jur, Privacy § 5 *et seq.*
[4–6] 14 Am Jur, Covenants, Conditions & Restrictions § 263 *et seq.*
[7] 14 Am Jur, Covenants, Conditions & Restrictions § 339.
[9] 14 Am Jur, Covenants, Conditions & Restrictions § 210 *et seq.*
[10] 14 Am Jur, Costs §§ 11, 97.

7. SAME—INJUNCTION—DAMAGES.
   It is unnecessary to show present damage in order to enjoin the violation of a building restriction.

8. PROPERTY—COURTS.
   It is not the function of courts to strike down private property agreements and to readjust those property rights in accordance with what seems reasonable upon a detached judicial view.

9. COVENANTS—HOUSING CODES—ZONING ORDINANCES—DEFINITIONS.
   Definitions adopted for legislative purposes in housing codes and zoning ordinances may not be employed in interpreting restrictive covenants.

10. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL ON APPEAL.
    No costs are allowed on appeal from order granting defendants' motion to dismiss plaintiffs' bill of complaint, made at close of plaintiffs' case, where case is remanded for further proceedings, since neither party has prevailed in full.

Appeal from Kent; Verdier (Leonard D.), J. Submitted June 8, 1955. (Docket No. 33, Calendar No. 46,456.) Decided October 3, 1955.

Bill by John E. Oosterhouse and Gertie W. Oosterhouse against Marvin R. Brummel and Louise Brummel to enforce building restrictions. Bill dismissed. Plaintiffs appeal. Reversed and remanded.

*Irving H. Smith,* for plaintiffs.

*Renihan & Goolian,* for defendants.

SMITH, J. The plaintiffs, John E. Oosterhouse and Gertie W. Oosterhouse, platted certain land in Kent county, Michigan, as "Ranch Home Sites," retaining title to one lot. The area was intended as a high-grade residential district. To that end, numerous restrictions were imposed, all of the deeds, containing similar restrictions. A certain portion of the exterior walls were to be of brick or stone.

The houses must have not less than a prescribed number of square feet of ground floor area. We will not recite all. We are concerned only with one —the set-back restriction. It reads as follows:

"Houses on lots on Kalamazoo avenue are to be set back 70 feet from the front lot line. Houses on corner lots to be set back 30 feet from the side line of said lot."

Defendants Marvin R. Brummel and Louise Brummel are the owners of lot 4. It is a corner lot. There is no doubt that Mr. Brummel knew of the restriction. It was discussed with him and it was contained in his deed. It is not so clear, however, that he was impressed with its requirements, for he proceeded with the construction of the north wall of an attached garage, which extended almost 3 feet (34 inches) into the proscribed space to the north. The violation was apparently deliberate. But it was not malevolent, and it was conceived in no spirit of deliberate harm to his neighbors' rights. The plain fact of the matter was that he wanted to put toilet facilities in the south end of the garage so his children would not constantly be traipsing through the house to go to the toilet.

Plaintiff John Oosterhouse, however, was both observant and vigilant. During the time the garage was under construction and at a time when the rafters were up and the roof boards on in part, he measured the setback of the garage and thus learned of the violation. He warned defendants and discussion ensued. Mr. Brummel asked certain concessions. Mr. Oosterhouse was adamant. "I told him the restriction was 30 feet and he was way over that and I told him he would have to comply with the building restrictions." A few days later, however, Mr. Oosterhouse returned. He would not insist that a portion of the roof (described) be

altered, "but he would not permit extension of the garage." Plaintiffs' brief describes the termination of the interview by stating, very simply, that Mr. Brummel "chased him off the place." It was their last conference. They next met in court.

Plaintiffs' bill of complaint we need not summarize. It alleged violation of the set-back restriction, in that the north wall of the garage extended beyond its proper line by 34 inches and the roof thereof something over 5 feet (64 inches). It asked injunctive relief, both as to compliance with set-back and removal of encroachments.

Subsequent to the filing of the bill of complaint and prior to the trial, defendants made amends, at least in part: They moved the principal walls of their garage back to the required 30 feet. The roof, however, was left as originally built. It was supported by steel lattice posts of an ornamental design, placed on brick supports, which extend north from the wall of the garage. These extensions, which are about 2 feet in height, capped with concrete, protrude into the restricted area for some 3 feet. The roof, in addition, extends north beyond its upright supports by about 3 additional feet.

At the conclusion of plaintiffs' case the trial judge granted defendants' motion to dismiss. The substance of his holding was that no one was injured by the overhanging garage roof or the brick extensions. He seemed also of the opinion that the whole matter came under the principle of *de minimis non curat lex.*

So long as restrictions imposed do not violate a sound public policy, and we find no such violation in this case, it is competent for our people to protect their homes and their access to light, air and view by covenants of restrictions. The objectives are clear. The participants wish to foster and be part of a home area in which haphazard building, the crowding of

lots and lot lines, is prohibited. No one is required to live in such an area. Those more gregarious, those desiring more intimate contact, have no difficulty in finding suitable quarters elsewhere. Once such restrictions are imposed, however, to all who have come to us in aid thereof, come to us lacking inequity, showing unchanged conditions, together with a reasonable zeal in maintaining the continuing vitality of the restrictions, we have responded with jealousy and alacrity. As we said in *Johnstone* v. *Detroit, Grand Haven & Milwaukee Railway Co.,* 245 Mich 65, 74 (67 ALR 373):

"Restrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy. The courts have long and vigorously enforced them by specific mandate. This Court has expressly recognized that the right of privacy for homes is a valuable right. *Signaigo* v. *Begun,* 234 Mich 246."

The doctrine of *de minimis,* as applied to real property and interests therein, must be applied with the utmost caution. It was the view of Mr. Justice Cowen in *Seneca Road Company* v. *Auburn & Rochester Rail-Road Company,* 5 Hill (NY) 170, that the *de minimis* maxim "is never applied to the positive and wrongful invasion of another's property." Although the Justice was speaking here of a building encroaching directly upon another's property, nevertheless, in the case at bar, although defendants built on their own land, they violated the rights of other lot owners who had purchased and built in reliance upon the restrictions. While we have never adopted a position so unyielding as that expressed by the eminent Justice, we have never hesitated in proper cases to restrain by injunction the invasion of property rights, *Signaigo* v. *Begun,* 234 Mich 246, and we do not assume that in all such

cases we have acted only when men of affairs would have regarded the right as substantial. We do not substitute our judgment for that of the parties, particularly where, as in the instant case, restrictive covenants are the means adopted by them to secure unto themselves the development of a uniform and desirable residential area. It is not, moreover, clear to us that the doctrine of *de minimis* has any reasonable application to the circumstances here under discussion. This violation is not a matter of inches merely, or fractions thereof. The overhang of the garage roof is almost 6 feet and we do not regard any such obtrusion as a mere mote in the eye of the beholder, particularly if he be a chancellor. The case of *Koffman* v. *Schreiber,* 219 Mich 1, is not in point. There the controversy turned on the meaning of the word "principal" in resolving the question of whether the restrictions condemned an open porch or merely controlled the principal building. Here the restrictions permit no such choice to be made.

The purpose of the restriction, as we said, is plain to be seen. It is to secure to all who build in the area a generous distance between homes and thus to secure to all the air, light, and view incident to distance. The requirement is that houses are to be set back 30 feet. We are not prepared to say that every incidental encroachment, unobtrusive and insignificant in area, such as, for example, normal steps, would violate the restrictions. But here it cannot seriously be argued that this roof projection, running the full width of the garage, with its steel supports, and its brick and concrete bases, is not an integral and significant part of the house itself. If the prescribed free space can be thus encroached upon for 6 feet, we see no reason why 16 would be objectionable and thus the restriction is disemboweled in fact while retaining the outward fairness of its form.

It is error, moreover, to require proof of present damage. Equity acts, under these circumstances, because of the nature of the violation itself.

" 'If the construction of the instrument be clear and the breach clear, then it is not a question of damage, but the mere circumstance of the breach of the covenant affords sufficient ground for the court to interfere by injunction.' ": *Lord Manners* v. *Johnson,* (1875) LR 1 Ch Div 673, 680, 45 LJ Chan 404, (from *Tipping* v. *Eckersley,* 2 Kay & Johnson's Reports, 264, 270 [69 Eng Rep 779]).

The Court has consistently held that it is unnecessary to show present damage in order to enjoin the violation of a building restriction. *Longton* v. *Stedman,* 182 Mich 405; *Austin* v. *Van Horn,* 245 Mich 344; *Smart Farm Co.* v. *Promak,* 257 Mich 684.

In *Austin* v. *Van Horn, supra,* 347, we stated:

"In the instant case, the plaintiff's right to maintain the restrictions is not affected by the extent of the damages he might suffer for their violation. What this Court said in *Longton* v. *Stedman,* 182 Mich 405, 414, applies here:

" 'The restrictions in the deeds have been violated. The amount of damages complainants have suffered is wholly immaterial. Such restrictions will be enforced. 3 Pomeroy's Equity Jurisprudence (2d ed), § 1342.' "

The danger to home owners in the building restriction cases is that today's exception becomes tomorrow's precedent and the next day's settled usage. Thus the isolated violation may plant the seed of a general practice which may subsequently lead to a finding of abandonment of the restrictive reciprocal easements. Better the seed were never planted.

In short, on this phase of the case, in the absence of countervailing public policy, it is not the function of the courts to strike down private property agree-

ments and to readjust those property rights in accordance with what seems reasonable upon a detached judicial view. Nor can definitions adopted for legislative purposes in housing codes and zoning ordinances be employed in interpreting restrictive covenants. *Phillips v. Lawler,* 259 Mich 567.

We are not, of course, passing at this stage of the case upon the propriety of an injunction. That will be a matter for the discretion of the trial chancellor after all matters of defense have been heard. Courts of equity, as we pointed out in *Cherry* v. *Board of Home Missions of Reformed Church in United States,* 254 Mich 496, grant or withhold injunctive relief depending upon the accomplishment of an equitable result in the light of all of the circumstances surrounding the particular case. What we have here said is that the matters are not picayune and the case should proceed. The answering pleadings, while not artistic, are passable.

The case is remanded to the trial court with direction to vacate the order dismissing plaintiffs' bill of complaint. Neither party having prevailed in full, no costs are allowed.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.