# STATE OF MICHIGAN

# COURT OF APPEALS

FERRY BEAUBIEN LLC,

Plaintiff-Appellant,

v

CENTURION PLACE ON FERRY STREET
CONDOMINIUM ASSOCIATION,

Defendant-Appellee.

UNPUBLISHED
December 14, 2017

No. 335571
Wayne Circuit Court
LC No. 16-008668-CH

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

This action involves two units of real property that were established as part of the Centurion Place on Ferry Street Condominium. Plaintiff, Ferry Beaubien LLC, appeals as of right an order granting summary disposition in favor of defendant, Centurion Place on Ferry Street Condominium Association (the Association), under MCR 2.116(I)(2) (non-moving party is entitled to judgment as a matter of law). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND OF THE CASE

In September 2005, the Association was established as a nonprofit corporation under Michigan's Nonprofit Corporation Act, MCL 450.2101 *et seq*., for the purpose of operating a condominium in Detroit, Michigan, pursuant to the Michigan Condominium Act (MCA), MCL 559.101 *et seq*. On July 25, 2006, Wayne County approved a Master Deed establishing the Centurion Place on Ferry Street Condominium. Centurion Place on Ferry Street, LLC (Centurion) was identified as the developer of the condominium project within the Master Deed. The Master Deed was recorded with the Wayne County Register of Deeds on July 26, 2006.

According to the Master Deed, the condominium was intended to consist of 10 units. However, only eight units were ever constructed, with Units 9 and 10 remaining undeveloped, vacant land. The Master Deed provided the following in the event the developer did not construct all 10 units:

> **7.1  Limit of Unit Contraction.**  The project established by this master deed consists of Ten (10) units and may, at the election of the developer, be contracted to a minimum of six (6) units. . . .

-1-

**7.2  Withdrawal of Units.**  The number of units in the project may, at the option of the developer within a period ending not later than six years after the recording of the master deed, be decreased by the withdrawal of a portion of the lands described . . . provided, that no unit that has been sold or that is the subject of a binding purchase agreement may be withdrawn without the consent of the co-owner, purchaser, and/or mortgagee of such unit. . . .

\* \* \*

**7.4  Amendment(s) to Master Deed.**  A withdrawal of lands from this project by the developer will be given effect by an appropriate amendment(s) to the master deed, which amendment(s) will not require the consent or approval of any co-owner, mortgagee, or other interested person. . . .

\* \* \*

**7.6  Withdrawal of Property.**  If the development and construction of all improvements to the project has not been completed within a period ending 10 years after the date on which contraction, or convertibility were last exercised, whichever first occurs, the developer shall have the right to withdraw all remaining undeveloped portions of the project without the consent of any co-owner, mortgagee, or other party in interest.  Any undeveloped portions not so withdrawn before the expiration of the time periods, shall remain as general common elements of the project, and all rights to construct units on such lands shall cease.

The condominium subdivision plan, which was approved on July 25, 2006, indicates that Units 1 through 8 of the project "MUST BE BUILT" while Units 9 and 10 "NEED NOT BE BUILT." On July 13, 2011, Centurion filed an amendment of the Master Deed, which indicated that Units 9 and 10 "may be built, but have not been built as of the date of this amendment."  Thereafter, Centurion stopped paying property taxes on Units 9 and 10 and the vacant property was subject to foreclosure and tax sale.

In September 2015, Association President Valarie Preyer filed an affidavit with the Wayne County Register of Deeds, stating that the Association was aware Units 9 and 10 were "to be placed on auction to be sold by the Wayne County Treasurer subsequent to his appropriate foreclosure actions for non-payment of real estate taxes."  Preyer noted that Units 9 and 10 were vacant and undeveloped land.  She announced in her affidavit that the Association had taken the position that any purchaser of the units at auction could not be considered a "successor developer" for purposes of MCL 559.235,[1] and that, under MCL 559.167, any purchaser would be required to complete construction of Units 9 and 10 before July 26, 2016—or ten years after

---

[1] MCL 559.235 defines "successor developer" as a person "who acquires title to the lesser of 10 units or 75% of the units in a condominium project . . . by foreclosure . . . ."

the recording of the Master Deed—or the units would "cease to legally exist and such area of the project will then become part of the project's general common element for ever more."

Kostakos Woodward LLC (Kostakos) purchased Units 9 and 10 at the tax sale. The Wayne County Treasurer transferred the units by quit claim deed to Kostakos on October 30, 2015. Kostakos then transferred the two units to Ferry Beaubien LLC, whose sole member is Alexandra Lipera. In May 2016, Lipera secured a building permit from the city of Detroit to construct an urban garden on Units 9 and 10. Once construction began, Preyer contacted the city of Detroit, asserting that the Association owned the land in question and that the building permit should be revoked. On June 8, 2016, the city of Detroit revoked Lipera's building permit, stating that it had determined Lipera "does not have an ownership interest in the subject property."

On July 8, 2016, plaintiff filed a complaint asserting that it held absolute title to the disputed property in fee simple, derived from the deeds executed by the Wayne County Treasurer following the tax sale. Plaintiff sought a declaratory ruling from the trial court to establish its rights to the vacant land comprising Units 9 and 10. On July 14, 2016, plaintiff also filed an emergency motion for declaratory judgment. Plaintiff explained that the Association had taken the position that the units in question needed to be constructed by July 26, 2016, "or the property reverts back to the association and becomes common property resulting in the Plaintiff losing its interest in the property." Plaintiff asserted that, under MCL 211.78k(5)(e) of the General Property Tax Act (GPTA), MCL 211.1a *et seq.*, any restrictions imposed on the property by the Master Deed were extinguished by the tax sale.

The Association argued in response that the restrictions imposed by the Master Deed were "private deed restrictions" for purposes of MCL 211.78k(5)(e) that survived the tax sale and that, under MCL 559.167(3), all of the statutory requirements were met to cause Units 9 and 10 to revert to general common elements of the condominium. In reply, plaintiff argued in the alternative that it amended the Master Deed on July 25, 2016, to remove Units 9 and 10 from the condominium before the units reverted to general common elements. Following a hearing, the trial court entered an order denying plaintiff's emergency motion for declaratory judgment and granting summary disposition in favor of defendant under MCR 2.116(I)(2).

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 657; 651 NW2d 458 (2002). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Id.* at 658. This case also implicates questions of statutory interpretation, which we review de novo. *Petersen v Magna Corp*, 484 Mich 300, 306; 773 NW2d 564 (2009).

## III. DISCUSSION

MCL 211.78k(5)(e) of the GPTA governs the interests in real property that remain following a tax sale and provides the following:

(e) That all existing recorded and unrecorded interests in that property are extinguished, except a visible or recorded easement or right-of-way, *private deed*

*restrictions*, interests of a lessee or an assignee of an interest of a lessee under a recorded oil or gas lease, interests in oil or gas in that property that are owned by a person other than the owner of the surface that have been preserved as provided in section 1(3) of 1963 PA 42, MCL 554.291, interests in property assessable as personal property under section 8(g), or restrictions or other governmental interests imposed pursuant to the natural resources and environmental protection act, 1994 PA 451, MCL 324.101 to 324.90106, if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section. [Emphasis added; footnote omitted.]

The parties agree that the only exception that would allow the restrictions of the Master Deed to survive the tax sale of Units 9 and 10 is the phrase "private deed restrictions" in MCL 211.78k(5)(e). Plaintiff argues that the Master Deed does not constitute a "private deed restriction," citing the definition of "master deed" set forth in the MCA. MCL 559.108 of the MCA defines "master deed" as follows:

"Master deed" means the condominium document recording the condominium project to which are attached as exhibits and incorporated by reference the bylaws for the project and the condominium subdivision plan for the project. The master deed shall include all of the following:

(a) An accurate legal description of the land involved in the project.

(b) A statement designating the condominium units served by the limited common elements and clearly defining the rights in the limited common elements.

(c) A statement showing the total percentage of value for the condominium project and the separate percentages of values assigned to each individual condominium unit identifying the condominium units by the numbers assigned in the condominium subdivision plan.

(d) Identification of the local unit of government with which the detailed architectural plans and specifications for the project have been filed.

(e) Any other matter which is appropriate for the project.

Plaintiff argues that "[a]bsent from this definition is any hint that a Condominium Master Deed could fall under the statutory definition of a 'private deed restriction.' " We disagree that the restrictions imposed by the Master Deed are not "private deed restrictions" falling within the exception set forth in MCL 211.78k(5)(e).

In *Lakes of the North Ass'n v TWIGA Ltd Partnership*, 241 Mich App 91, 99; 614 NW2d 682 (2000), this Court addressed whether restrictive covenants, including a covenant to pay association assessments, were "private deed restrictions" for purposes of MCL 211.78k(5)(e) or whether such restrictions were encumbrances otherwise extinguished by a tax sale. The *TWIGA* Court explained that "[p]lanned unit developments are a modern trend in residential living. Deed

restrictions and covenants are vital to the existence and viability of such communities, and 'if clearly established by proper instruments, are favored by definite public policy.' " *Id.*, quoting *Oosterhouse v Brummel*, 343 Mich 283, 287; 72 NW2d 6 (1995). The *TWIGA* Court explained that, "[b]ecause public policy favors restrictions and covenants regarding residential use, we believe that the Legislature did not intend to cancel such restrictions and covenants in the event of a tax sale." *Id.* The Court thus held that "[r]estrictive covenants and covenants to pay association assessment[s] are private deed restrictions" that the Legislature did not intend to cancel by a tax sale. *Id.* at 100.

Like the covenant to pay an association assessment in *TWIGA*, the Master Deed in this case represents a restrictive covenant that constitutes a "private deed restriction" under MCL 211.78k(5)(e). *Black's Law Dictionary* (10th ed) defines "restrictive covenant," as the term pertains to real property, as "[a] private agreement, usu. in a deed or lease, that restricts the use or occupancy of real property, esp. by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." Among other restrictions, the Master Deed specifies the "units that may be developed in the project, including the number, boundaries, dimensions, and area of each unit," as shown by the condominium subdivision plan, which was incorporated by reference into the Master Deed. As in *TWIGA*, the mere fact that plaintiff acquired Units 9 and 10 through a tax sale does not extinguish the use restrictions imposed by the Master Deed. We therefore conclude that the restrictions imposed on Units 9 and 10 by the Master Deed survived the tax sale of the units.

Plaintiff argues in the alternative that Units 9 and 10 are not subject to the Master Deed because it amended the Master Deed and withdrew the units from the condominium project on July 25, 2016, less than 10 years after the Master Deed was recorded. At the time of the events giving rise to this action, MCL 559.167, as amended by 2002 PA 283, stated the following:

> (1) A change in a condominium project shall be reflected in an amendment to the appropriate condominium document. An amendment to the condominium document is subject to sections 90, 90a, and 91.

> (2) If a change involves a change in the boundaries of a condominium unit or the addition or elimination of condominium units, a replat of the condominium subdivision plan shall be prepared and recorded assigning a condominium unit number to each condominium unit in the amended project. The replat of the condominium subdivision plan shall be designated replat number _____ of _____ county condominium subdivision plan number _____, using the same plan number assigned to the original condominium subdivision plan.

> (3) Notwithstanding section 33, *if the developer has not completed development and construction of units or improvements in the condominium project that are identified as "need not be built" during a period ending 10 years after the date of commencement of construction by the developer of the project, the developer, its successors, or assigns have the right to withdraw from the project all undeveloped portions of the project not identified as "must be built" without the prior consent of any co-owners, mortgagees of units in the project, or any other party having an interest in the project.* If the master deed contains

provisions permitting the expansion, contraction, or rights of convertibility of units or common elements in the condominium project, then the time period is 6 years after the date the developer exercised its rights with respect to either expansion, contraction, or rights of convertibility, whichever right was exercised last. The undeveloped portions of the project withdrawn shall also automatically be granted easements for utility and access purposes through the condominium project for the benefit of the undeveloped portions of the project. *If the developer does not withdraw the undeveloped portions of the project from the project before expiration of the time periods, those undeveloped lands shall remain part of the project as general common elements and all rights to construct units upon that land shall cease.* In such an event, if it becomes necessary to adjust percentages of value as a result of fewer units existing, a co-owner or the association of co-owners may bring an action to require revisions to the percentages of value under section 95. [Emphasis added; footnotes omitted.]

In the trial court, defendant presented evidence showing that construction on the condominium project began by, at the latest, April 18, 2006. It is also clear from the condominium subdivision plan filed with the Master Deed that Units 9 and 10 were designated as "NEED NOT BE BUILT." Under former MCL 559.167(3), as of April 18, 2016, or "10 years after the date of commencement of construction by the developer of the project," because the developer did not withdraw Units 9 and 10 from the project before that time, Units 9 and 10 became "part of the project as general common elements" and all rights to construct units on the land ceased.[2] Therefore, under the version of MCL 559.167(3) in effect at the time in question, Units 9 and 10 reverted to general common elements of the condominium on April 18, 2016.[3]

Plaintiff argues that it is a developer of the condominium project and that it amended the Master Deed on July 25, 2016, or less than 10 years after the Master Deed was recorded, to withdraw Units 9 and 10 from the condominium. However, the relevant date for purposes of former MCL 559.167(3) is "10 years after the date of commencement of construction by the

---

[2] Plaintiff does not argue that, in the first amendment of the Master Deed, recorded July 13, 2011, Centurion exercised rights "with respect to either expansion, contraction, or rights of convertibility," such that the relevant time period would be "6 years after the date the developer exercised its rights . . . ." MCL 559.167(3), as amended by 2002 PA 283. The Association explained that the "Amendment does **not** alter nor attempt to alter the language of Exhibit B, ("Units 9 & 10 NEED NOT BE BUILT"), but states that prospective future action "**may**" (emphasis added) at the election of the developer be contracted. Nothing in the Amendment purports to effectuate any contraction . . . ."

[3] We note that, effective September 21, 2016, the Legislature amended MCL 559.167 by way of 2016 PA 223. Plaintiff does not raise any issues regarding the effect of the 2016 amendment of MCL 559.167 on the reversion of Units 9 and 10 to general common elements of the condominium, so we do not address the matter in this opinion.

developer of the project," not 10 years after the recording of the Master Deed.[4]  Likewise, Section 7.6 of the Master Deed states the following:

> If the development and construction of all improvements to the project has not been completed *within a period ending 10 years after the date on which construction was commenced*, or six years after the date on which rights of expansion, contraction, or convertibility were last exercised, whichever first occurs, the developer shall have the right to withdraw all remaining undeveloped portions of the project without the consent of any co-owner, mortgagee, or other party in interests.  Any undeveloped portions not so withdrawn before the expiration of the time periods, shall remain as general common elements of the project, and all rights to construct units on such lands shall cease.  [Emphasis added.]

Therefore, plaintiff's attempt to withdraw Units 9 and 10 by amendment fell outside the time period specified by former MCL 559.167 and Section 7.6 of the Master Deed.

Additionally, defendant argues that plaintiff was not authorized to amend the Master Deed and withdraw Units 9 and 10 because it was not a developer or successor developer of the condominium project.  We agree.  The Master Deed states the following with respect to withdrawal of units from the condominium project:

> **7.2  Withdrawal of Units.**  The number of units in the project may, at the option *of the developer* within a period ending not later than six years after the recording of the master deed, be decreased by the withdrawal of a portion of the lands described . . . .
>
> \* \* \*
>
> **7.4  Amendment(s) to Master Deed.**  A withdrawal of lands from this project *by the developer* will be given effect by an appropriate amendment(s) to the master deed, which amendment(s) will not require the consent or approval of any co-owner, mortgagee, or other interested person. . . .  [Emphasis added.]

Plaintiff was not identified as a developer in the Master Deed, and the MCA defines "successor developer" as "a person who acquires title to the lesser of 10 units or 75% of the units in a condominium project . . . by foreclosure . . . ."  MCL 559.235(1).  At the hearing on plaintiff's emergency motion for declaratory judgment, plaintiff's counsel argued that plaintiff was a successor developer because plaintiff acquired "less than 10" units at the tax sale.  However, it is

---

[4] The amended version of MCL 559.167(3) provides that the relevant time period is "10 years after the recording of the master deed," but nothing in the language of amended Subsection (3) suggests that it applies retroactively.  We presume that statutory amendments operate prospectively unless a contrary intent is clearly manifested in the language of the statute.  *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001).

clear by a plain reading of MCL 559.235 that the statute defines a "successor developer" as someone who acquires title to 10 units or 75% of the units in a condominium project, whichever is less, not that the term applies to anyone who acquires less than 10 units. Plaintiff is therefore not a "successor developer" for purposes of the MCA and had no authority to amend the Master Deed.

Defendant also argues that plaintiff did not properly record the amendment purporting to withdraw Units 9 and 10 from the condominium project. The MCA provides that "[a]n amendment to the master deed . . . shall not be effective until the amendment is recorded." MCL 559.191(1). The amendment that plaintiff attached to its reply brief in support of its emergency motion for declaratory judgment does not contain a record stamp from the Wayne County Register of Deeds. Defense counsel explained at the hearing on plaintiff's emergency motion that he checked with the Wayne County Register of Deeds and that no such amendment had been recorded. We therefore agree with defendant that plaintiff failed to present evidence showing that it properly recorded an amendment of the Master Deed. For all of these reasons, the trial court did not err by concluding that the restrictions of the Master Deed survived the tax sale of Units 9 and 10 and by granting summary disposition in favor of defendant.

## IV. DEFENDANT'S REQUEST FOR DAMAGES

Defendant contends that this Court should award damages under MCR 7.216(C) because plaintiff's appeal is vexatious and because plaintiff misrepresented in its brief on appeal that it "recorded" a second amendment of the Master Deed. MCR 7.216(C) states the following:

> **(C) Vexatious Proceedings.**
>
> (1) The Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8), assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because
>
> (a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal; or
>
> (b) a pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.

We need not address defendant's request at this time because the request was not included in a timely filed motion under MCR 7.211(C)(8), which states that a party's request for damages for a vexatious proceeding "must be contained in a motion filed under this rule" and may be filed "at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious." The time for filing a motion under MCR 7.211(C)(8) has not yet occurred and defendant did not include its request for damages in a separate motion. We decline to assess damages in this matter on our own initiative.

Defendant also argues that it is entitled to costs and reasonable attorney fees under MCL 559.206(b), which states that, "[i]n a proceeding arising because of an alleged default by a co-owner, the association of co-owners or the co-owner, if successful, shall recover the costs of the proceeding and reasonable attorney fees, as determined by the court, to the extent the condominium documents expressly so provide." Plaintiff pursued this action in an attempt to obtain a declaratory judgment from the trial court announcing that the Master Deed did not apply to the units plaintiff purchased at a tax sale. The proceeding therefore arose as a result of plaintiff's attempt to ascertain its property rights in Units 9 and 10, not "because of an alleged default by a co-owner[.]" Also, in *Cohan v Riverside Park Place Condo Ass'n, Inc*, 123 Mich App 743, 750; 333 NW2d 574 (1983),[5] this Court agreed that, in reference to MCL 559.206(b), "attorney fees may not be awarded to a condominium association where the action is brought by a unit owner rather than the association." Finally, MCL 559.206(b) only authorizes an award of costs and attorney fees "to the extent the condominium documents expressly so provide." The manner in which the Association and unit owners agree to allocate the costs of resolving conflicts presumably would be part of the condominium bylaws, which were not presented as part of the lower court record. We are therefore not compelled to award costs and attorney fees to defendant under MCL 559.206(b).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

---

[5] Opinions of the Court of Appeals issued before November 1, 1990, are not binding, but may be considered persuasive authority. MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).