WAYNE COUNTY CHIEF EXECUTIVE v MAYOR OF THE CITY
OF DETROIT

Docket No. 166961. Submitted January 10, 1995, at Detroit. Decided
April 5, 1995; approved for publication May 31, 1995, at 9:00
A.M.

The Wayne County Chief Executive, the Wayne County Prosecuting Attorney, and others, brought an action in the Wayne Circuit Court against the Mayor of the City of Detroit, and others, seeking declaratory and injunctive relief after the city billed the owners of certain properties for outstanding taxes and refused to expunge its tax liens against those properties. The state had acquired title to several properties in the City of Detroit as a result of delinquent taxes and sold them to Wayne County. The county sold some of the properties to certain community organizations for a nominal fee. The city billed the organizations and the county for the outstanding taxes relating to the property and refused to expunge the tax liens. The court, Richard C. Kaufman, J., entered a writ of mandamus canceling delinquent taxes on all the properties in the city that had become fully vested in the state and subsequently sold to the various plaintiffs and removing the properties from the city's assessment rolls. The defendants appealed.

The Court of Appeals *held:*

1. The trial court correctly determined that· the City of Detroit is an inferior taxing unit subject to MCL 211.67a(2); MSA 7.112(1)(2).

2. The trial court properly interpreted MCL 211.67a; MSA 7.112(1) and MCL 211.40; MSA 7.81 in pari materia to avoid a conflict.

3. There is no merit to the argument by the City of Detroit that the cancelation of the tax obligations will cause irreparable damage to its ability to provide essential services for the health, safety, and welfare of its citizens.

4. The trial court did not err in ruling that the City of Detroit was not entitled to a hearing pursuant to MCL

REFERENCES

Am Jur 2d, Municipal Corporations, Counties, and Other Political
Subdivisions § 127; State and Local Taxation § 906.
See ALR Index under Home Rule; Taxes.

211.131e; MSA 7.190(3) because it was not an owner of a significant property interest in the lands.

Affirmed.

1. TAXATION — TAX-REVERTED PROPERTIES — TITLE — LIENS.

The State of Michigan acquires absolute title to all tax-reverted properties that are not redeemed and not purchased at an auction; once this occurs, all taxes, special assessments, and liens that are charged against the property must be canceled and the state and its inferior taxing units must bear the loss on such taxes (MCL 211.67, 211.67a[2]; MSA 7.112, 7.112[1][2]).

2. MUNICIPAL CORPORATIONS — HOME RULE CITIES.

A home rule city may not enact a charter provision that contravenes a state statute.

*Saul A. Green,* Wayne County Corporation Counsel, and *Patricia Irving-Cwiek,* Assistant Corporation Counsel, for the plaintiffs.

*Donald Pailen,* City of Detroit Corporation Counsel, and *Perry L. Yun,* Assistant Corporation Counsel, for the defendants.

Before: CONNOR, P.J., and WAHLS and SAAD, JJ.

PER CURIAM. Defendants appeal as of right from the circuit court's writ of mandamus (1) canceling delinquent taxes on all properties in the City of Detroit that had become fully vested in the State of Michigan and subsequently sold to the various plaintiffs and (2) removing the properties from the city's assessment rolls. We affirm.

By law, the State of Michigan acquires absolute title to all tax-reverted properties that are not redeemed and not purchased at an auction. MCL 211.67; MSA 7.112. Once this occurs, all taxes, special assessments, and liens that are charged against the property must be canceled. MCL 211.67a(2); MSA 7.112(1)(2). The state and its inferior taxing units are required to bear the loss on such taxes. *Id.*

After acquiring title to several properties in the City of Detroit, the state sold them to Wayne County. Wayne County then sold some properties to the plaintiff community organizations for a nominal fee. In turn, these organizations agreed to rehabilitate the abandoned homes under a program developed by the county. The city billed the organizations and the county for outstanding taxes and refused to expunge the tax liens. Plaintiffs initiated an action against defendants, seeking a declaratory judgment and injunctive relief, which the circuit court granted.

On appeal, defendants contend that as a home rule city, the City of Detroit has sovereign power under the Michigan Constitution to levy taxes as an independent agent, Const 1963, art 7, §§ 21 and 22. Therefore, defendants argue, because the city's charter determines the procedures for collection of city taxes, the city is not subject to § 67a of the general property tax act. We disagree.

First, we note that defendants have overlooked that the powers rendered to the city under the constitution are subject to laws enacted by the Legislature:

> Each city and village is granted power to levy other taxes for public purposes, *subject to limitations and prohibitions provided by this constitution or by law.* [Const 1963, art 7, § 21. Emphasis added.]
>
> Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property, and government, *subject to the constitution and law.* . . . [Const 1963, art 7, § 22. Emphasis added.]

Moreover, it has been held that a home rule city cannot enact a charter provision that contravenes a statute. *Marks v Battle Creek,* 358 Mich 114,

117; 99 NW2d 587 (1959); *Bostedor v Eaton Rapids,* 273 Mich 426, 429; 263 NW 416 (1935). Accordingly, we believe that the trial court correctly determined that the City of Detroit is an inferior taxing unit subject to MCL 211.67a(2); MSA 7.112(1)(2).

Nor do we agree with defendants that the term "inferior taxing unit" is ambiguous on its face and therefore renders the statutory provision inapplicable to the city. The two cases cited by defendants, *Hoffman v Otto,* 277 Mich 437; 269 NW 225 (1936), and *Detroit v Sitter,* 288 Mich 505; 285 NW 40 (1939), do not support their position. In these cases, the Supreme Court held that a particular statute in effect at the time did not plainly express that the City of Detroit must redeem property to maintain a tax lien upon properties that had been purchased by the plaintiffs from the state.[1] The Supreme Court did not hold, as defendants imply, that the term used in the statute, "city or political subdivision," was ambiguous. On the other hand, MCL 211.67a(2); MSA 7.112(1)(2) specifically provides that all liens shall be canceled after unredeemed property is conveyed to the state and that the state and its inferior taxing units shall bear the loss of those liens.

Defendants also claim that MCL 211.67a; MSA 7.112(1) irreconcilably conflicts with MCL 211.40; MSA 7.81, which provides in relevant part:

Notwithstanding any provisions in the charter of any city or village to the contrary, all taxes shall

---

[1] In *Hoffman,* a statute in effect at the time stated that any person who owned land to be sold in a tax sale could redeem the land by showing that he owned that land and by paying the sales price. In *Sitter,* the statute was amended to provide that any person may redeem within eighteen months after a tax sale by showing to the county treasurer that the person, city, or political subdivision owned the land that they wish to redeem and by paying the sale price.

become a debt due to the township, city, village and county from the owner or person otherwise to be assessed on the tax day provided for in sections 2 and 13 of this act . . . and the lien for such amounts, and for all interest and charges thereon, shall continue until payment thereof.

We disagree that the two statutes are irreconcilable. MCL 211.40; MSA 7.81 declares that a tax lien shall arise on a designated tax day and continue until the outstanding tax is paid by the owner of the property. This provision clearly applies before foreclosure on the property. On the other hand, MCL 211.67a; MSA 7.112(1) governs when the property reverts to the state upon the owner's failure to redeem the property after foreclosure. Therefore, we find that the trial court properly interpreted the statutes in pari materia to avoid a conflict.

We further reject the city's argument that the cancelation of the tax obligations will cause irreparable damage to its ability to provide essential services for the health, safety, and welfare of its citizens. In asserting this position, defendants essentially ignore the purpose behind § 67a, which is to attract prospective buyers and ultimately restore the property to the tax rolls. *Keefe v Oakland Co Drain Comm'r,* 306 Mich 503, 512; 11 NW2d 220 (1943); *Sonenklar v Farmington Twp Bd,* 25 Mich App 387, 391; 181 NW2d 574 (1970). If the liens remain intact, a prospective buyer is less likely to purchase the property. Thus, the taxes would remain unpaid and the property would not be utilized for any beneficial use. Furthermore, the health and welfare of the city is promoted when the community organizations rehabilitate an abandoned house. Therefore, we find this argument meritless.

Finally, the trial court did not err in ruling that

the city was not entitled to a hearing pursuant to MCL 211.131e; MSA 7.190(3) because it was not an owner of a significant property interest in the lands.

Affirmed.