LAKES OF THE NORTH ASSOCIATION v TWIGA LIMITED
PARTNERSHIP

Docket No. 215900. Submitted January 12, 2000, at Grand Rapids. Decided
May 12, 2000, at 9:00 A.M.

Lakes of the North Association brought an action in the Antrim Circuit Court against TWIGA Limited Partnership to foreclose on a lien for unpaid association assessments on lots purchased by the defendant from the state of Michigan. The lots had been bid to the state at a tax sale and were subject to a recorded declaration of restrictive covenants that required the developer who executed and recorded the declaration, as well as any subsequent owners, to pay an annual association assessment. The lien on which the plaintiff sought foreclosure was for unpaid annual assessments for years after the defendant acquired the lots from the state. The defendant filed a counterclaim for a declaratory judgment that it owned the lots free and clear of the covenant to pay assessments inasmuch as the covenant was an "encumbrance" that, pursuant to MCL 211.67; MSA 7.112, was canceled by the tax sale. In the plaintiff's action, the court, Thomas G. Power, J., granted summary disposition for the plaintiff and denied summary disposition for the defendant. In the defendant's counterclaim, the court entered a judgment of no cause of action. The defendant appealed, and the plaintiff cross appealed the trial court's determination that the association assessment was not an "easement" pursuant to MCL 211.67b; MSA 7.112(2).

The Court of Appeals *held*:

1. MCL 211.67; MSA 7.112 sets forth a form decree that circuit courts must substantially adopt when ordering a tax sale. The form decree states that an encumbrance against a parcel bid to the state at a tax sale shall be canceled if the parcel is not redeemed or an appeal is not taken. The term "encumbrance," as used in MCL 211.67; MSA 7.112, is ambiguous, rendering the statute subject to judicial construction. The statute's purpose in canceling encumbrances is to attract prospective buyers and ultimately restore the property to the tax rolls. The restrictive covenant at issue in this case is not an encumbrance under the statute. Restrictive covenants, especially those pertaining to residential use, enhance and preserve the value of real estate. Preservation of property value

will facilitate, not impede, the objective of the statute to restore properties to the tax rolls.

2. The issue whether a covenant to pay association assessments is an "easement" within the meaning of MCL 211.67b; MSA 7.112(2) need not be addressed in light of the determination that the plaintiff's right to collect assessments survived the tax sale.

Affirmed.

Taxation — Real Property — Tax Sales — Restrictive Covenants — Association Fees.

A restrictive covenant requiring the owner of a parcel of residential realty and subsequent owners of the realty to pay an annual assessment to a neighborhood association, as applied to an owner who purchases the realty from the state after the realty has been bid to the state at a tax sale for assessment periods after the owner acquired the property, is not an "encumbrance" for purposes of the statute that provides that an encumbrance against a parcel bid to the state at a tax sale shall be canceled if the parcel is not redeemed or an appeal is not taken (MCL 211.67; MSA 7.112).

*Calcutt, Cunningham, Davison, Rogers, Boynton & Petterson* (by *Jack E. Boynton*), for the plaintiff.

*Willard C. Ducharme* and *Cooper, Walinski & Cramer* (by *Paul A. Callam*), for the defendant.

*Mark F. Makower*, for Community Associations Institute.

Before: MARKEY, P. J., and MURPHY and R. B. BURNS*, JJ.

PER CURIAM. Defendant TWIGA Limited Partnership appeals by right the trial court's order granting summary disposition to plaintiff Lakes of the North Association on plaintiff's claim for past due association assessments. Plaintiff cross appeals, claiming that the trial court's finding that the association assessment

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

was not an "easement" pursuant to MCL 211.67b; MSA 7.112(2) was erroneous. We affirm.

The parties do not dispute the facts in this case. This case involves four residential lots in the Snowcrest Heights subdivision in Antrim County that are presently owned by defendant. The four lots are part of plaintiff's development that is a platted residential area encompassing about 10,000 acres. The development, which is managed by plaintiff, contains 8,028 lots within a number of subdivisions and approximately 3,500 acres of common property.

In 1992, the state of Michigan became the owner of the four lots as a result of a 1991 tax sale. Pursuant to MCL 211.67; MSA 7.112, the trial court entered an order of judgment in favor of the state of Michigan on each parcel because the 1988 taxes were unpaid. The order directed the sale of each parcel unless the aggregate amount was paid before the sale. Because the taxes were not paid and the lots were not bid on, the lots were bid to the state. Pursuant to MCL 211.67a(1); MSA 7.112(1)(1), within sixty days of the sale, the state treasurer conveyed title by deed to each of the four lots to the state. Title became "absolute in the state" upon the expiration of the redemption period, and "all taxes, special assessments, which [were] charged against or [were] liens upon [the lots], and other liens and encumbrances, against [the lots] of whatever kind or nature, [were] cancelled . . . ." MCL 211.67; MSA 7.112. In 1994, defendant purchased the four lots from the state.

Before being purchased by the state in 1992, all the lots in the Snowcrest subdivision were owned by a single developer. In 1972, the developer executed and recorded a declaration of restrictive covenants with

the county register of deeds affecting all the lots. The declaration of restrictive covenants provided for maintenance assessments to be paid by owners of the lots. The covenant provided:

> The developer being the owner of all the properties hereby covenants and each subsequent owner by acceptance of a land contract and/or a deed therefor, whether or not it shall be expressed in any such deed or contract is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges; (2) special assessments for capital improvements, such assessments to be fixed, established, and collected from time to time as hereinafter provided. The annual and special assessments, together with such interest thereon and costs of collection thereof as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the property against which each assessment is made. Each such assessment, together with such interest thereon and cost of collection thereof as hereinafter provided, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due.

As set forth in the declaration of restrictive covenants, the purpose for the assessments was to "promot[e] the recreation, health, safety and welfare of the residents in the Properties and in particular for the improvement and maintenance of properties, services, and facilities devoted to this purpose and to the use and enjoyment of the Common Properties and improvements thereon and thereto . . . ." Specifically, the annual assessments are used to pay for the maintenance of the pool, parks, equipment, and general upkeep, management, and operation of the Lakes of the North area. The declaration of restrictive covenants also provided that if a lot owner failed to pay the assessments, a lien would be placed on the prop-

erty and plaintiff would have the right to bring legal action against the lot owner to collect the assessments, interest, penalty fees, and costs of collecting the assessment fees.

After defendant purchased the lots in 1994, plaintiff charged defendant the annual assessments for the years thereafter. However, defendant refused to pay the assessments because it believed that the lots were no longer subject to assessment because absolute title had vested in the state pursuant to the tax sale, and, accordingly, special assessments, liens, and encumbrances against the lots were canceled, including the declaration of restrictive covenants that contained the covenant to pay maintenance assessments. In 1998, plaintiff filed this action to foreclose its lien on the four lots for the unpaid assessments as provided in the declaration of restrictive covenants. Defendant counterclaimed and sought a declaratory judgment that it owned the four lots free and clear of any covenant to pay assessments to plaintiff because of the tax sale to the state of Michigan.

Thereafter, both parties moved for summary disposition. The trial court denied defendant's motion for summary disposition, granted summary disposition in favor of plaintiff in accordance with MCR 2.116(I)(2), and entered a judgment of no cause of action in favor of plaintiff with respect to defendant's entire counter-complaint. The trial court rejected defendant's arguments and found that the restrictive covenant for payment of assessments was not an "encumbrance" pursuant to MCL 211.67; MSA 7.112, and, therefore, the restrictive covenant survived the tax sale. The trial court ordered defendant to pay assessments, penalties, interest, and attorney fees and costs to plaintiff.

Defendant asserts that the trial court erroneously concluded that a covenant to pay an association assessment is not an "encumbrance" within the meaning of MCL 211.67; MSA 7.112. We disagree. This Court reviews the trial court's grant of summary disposition de novo. *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995). Further, statutory interpretation is a question of law that is reviewed de novo on appeal. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

MCL 211.67; MSA 7.112 sets forth a form decree that circuit courts must substantially adopt when ordering a tax sale on real estate. The form decree for sale states, in part:

> It is further ordered, adjudged and decreed that title to each parcel of land ordered in this decree to be offered for sale, and which parcel of land is bid in at such sale to the state, shall become absolute in the state of Michigan on the expiration of the period of redemption from such sale, and all taxes, special assessments, which are charged against or are liens upon such parcel, and other liens and encumbrances, against such parcel of whatever kind or nature, shall be cancelled as of such date, unless any said parcel of land shall be redeemed as provided in section 74 of Act No. 206 of the Public Acts of 1893, as amended, or unless an appeal shall have been taken as provided in said act.

In accordance with MCL 211.67; MSA 7.112, the trial court entered an order in the present case, stating that

> title to each parcel of land in this judgment [shall] be offered for sale, and those parcels which are bid to the state, shall become absolute in the State of Michigan unless

redeemed as provided in Section 74 PA 206 of 1893, as amended. All taxes, special assessments and other liens and encumbrances shall be canceled as of that date unless an appeal has been made as provided in this Act.

Defendant argues that a declaration of restrictive covenants, including the covenant to pay an association assessment, is an "encumbrance" within the meaning of MCL 211.67; MSA 7.112, and, accordingly, any such restrictions and covenants previously recorded against the four subject lots were canceled when title became absolute in the state following a tax sale. The Legislature did not define "encumbrance" within chapter 211, the General Property Tax Act, nor could we find any Michigan cases interpreting the term "encumbrance" in the context of MCL 211.67; MSA 7.112.

Defendant urges this Court to construe the term "encumbrance" broadly by citing *Madhavan v Sucher*, 105 Mich App 284; 306 NW2d 481 (1981), which defined "encumbrance" as "anything which constitutes a burden upon the title, such as a right-of-way, a condition which may work a forfeiture of the estate, a right to take off timber, or a right of dower." *Id.* at 288; see, also, *Post v Campau*, 42 Mich 90, 94-95; 3 NW 272 (1879). Although it is true that Michigan has expansively defined the term "encumbrance" as illustrated by *Madhavan* and *Post*, other Michigan cases have limited the scope of the term. For example, in *Butcher v Burton Abstract & Title Co*, 52 Mich App 98, 101; 216 NW2d 434 (1974), this Court stated: "Granting that the broadest definition of the word "encumbrance" might include prospective charges, the general rule is that a special assessment does not become an encumbrance until it has achieved lien

status." See, also, *Municipal Investors Ass'n v City of Birmingham*, 298 Mich 314, 328; 299 NW 90 (1941), aff'd 316 US 153; 62 S Ct 975; 86 L Ed 1341 (1942). Further, this Court has held that ad valorem taxes not yet due were not encumbrances within the meaning of a title insurance policy, which provided that the "Title Company will . . . defend the insured in all actions or proceedings founded on a claim of . . . incumbrance prior in date to this policy . . . ." *Butcher, supra* at 99, 101-102.

On the basis of the above cases, we conclude that, because reasonable minds could differ regarding the scope of the term "encumbrance" as used in MCL 211.67; MSA 7.112, the statute is ambiguous and judicial construction is appropriate. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Id*. When the language of the statute is of doubtful meaning, as in the present case, the Court must examine the object of the statute and apply a reasonable construction that best accomplishes the statute's purpose. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). In the present case, the purpose for canceling past due taxes, assessments, and liens against foreclosed property is "to attract prospective buyers and ultimately restore the property to the tax rolls." *Wayne Co Chief Executive v Mayor of Detroit*, 211 Mich App 243, 247; 535 NW2d 199 (1995).

Defendant asserts that land with a restrictive covenant would be more difficult to restore to the tax roll; consequently, a holding that such covenants survive a

tax sale would defeat the object of the statute. We disagree. Restrictive covenants, especially those pertaining to residential use, enhance and preserve the value of real estate. *Bellarmine Hills Ass'n v Residential Systems Co*, 84 Mich App 554, 559; 269 NW2d 673 (1978). Preservation of property value will facilitate, not impede, the objective of the tax statute to restore the property to the tax rolls. Destruction of such covenants following a tax sale reduces the value of the property, and perhaps the other properties within the community, because landowners would no longer be able to preserve its planned character. Planned unit developments are a modern trend in residential living. Deed restrictions and covenants are vital to the existence and viability of such communities, and "if clearly established by proper instruments, are favored by definite public policy." *Oosterhouse v Brummel*, 343 Mich 283, 287; 72 NW2d 6 (1955); see, also, *City of Livonia v Dep't of Social Services*, 423 Mich 466, 525; 378 NW2d 402 (1985) ("[r]estrictions for residence purposes are particularly favored by public policy and are valuable property rights"). Because public policy favors restrictions and covenants regarding residential use, we believe that the Legislature did not intend to cancel such restrictions and covenants in the event of a tax sale. We agree with the trial court in this case that the term "encumbrance" within the meaning of MCL 211.67; MSA 7.112 "applies to things that are actually presently existing against the title to the property." The parties agree that a lien for past due assessments arising before a tax sale does not survive a tax sale. However, plaintiff is only attempting to collect assess-

ments due for the periods after defendant became the owner of the four lots.

Further, our conclusion that restrictive covenants, such as the one at issue in this case to pay association assessments, are not encumbrances within the meaning of MCL 211.67; MSA 7.112 is supported by the Legislature's recent and broad amendments of the General Property Tax Act in 1999 PA 123. MCL 211.78k; MSA 7.124(11), which became effective on October 1, 1999, was drafted to replace MCL 211.67; MSA 7.112 (repealed effective December 31, 2003). MCL 211.78k(5)(b); MSA 7.124(11)(5)(b) states that "fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit . . . ." Moreover, MCL 211.78k(5)(e); MSA 7.124(11)(5)(e) states that "all existing recorded and unrecorded interests in that property are extinguished, *except* a visible or recorded easement or right-of-way, *private deed restrictions*, restrictions imposed pursuant to the natural resources and environmental act . . . , or other governmental interests." (Emphasis added.) Restrictive covenants and covenants to pay association assessment are private deed restrictions, and as evidenced by MCL 211.78k(5)(e); MSA 7.124(11)(5)(e), the Legislature did not intend such covenants to be canceled by a tax sale. Accordingly, the trial court did not err in granting summary disposition to plaintiff after it properly concluded that a covenant to pay prospective association assessments is not an encumbrance within the meaning of MCL 211.67; MSA 7.112.

In light of our conclusion that plaintiff's right to collect prospective assessment fees survives a tax sale, it is unnecessary for this Court to address

whether a covenant to pay association assessment fees is an "easement" within the meaning of MCL 211.67b; MSA 7.112(2) and whether plaintiff stated a valid defense to defendant's counterclaim.

We affirm.