*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PETERSEN FINANCIAL, LLC,

      Plaintiff-Appellant,

V

CITY OF KENTWOOD and KENT COUNTY
TREASURER,

      Defendants-Appellees.

UNPUBLISHED
April 22, 2021

No. 350208
Kent Circuit Court
LC No. 16-011820-CH

Before: MURRAY, C.J., and MARKEY and LETICA, JJ.

PER CURIAM.

This case involves the issue whether Petersen Financial, LLC (Petersen), as the purchaser of property following a tax foreclosure, became liable for the previous owner's obligations connected to public improvements benefiting the property or whether those obligations were extinguished by the judgment of foreclosure. Petersen filed the current action seeking a declaratory judgment that any obligations had been extinguished by the foreclosure judgment. In 2017, the trial court granted summary disposition to defendants City of Kentwood (the City) and Kent County Treasurer (the Treasurer), primarily on the basis that Petersen's claims fell within the exclusive jurisdiction of the Michigan Tax Tribunal. Petersen appealed, and this Court reversed the trial court's jurisdictional ruling and remanded for further proceedings. See *Petersen Fin LLC v City of Kentwood*, 326 Mich App 433; 928 NW2d 245 (2018). On remand, the parties filed cross-motions for summary disposition, and the trial court again granted summary disposition in favor of defendants, this time under MCR 2.116(C)(8) and (I)(2). Briefly stated, the trial court concluded that the obligation still at issue on remand involved "future installments" of a "special assessment," which survived foreclosure under MCL 211.78k(5)(c) of the General Property Tax Act (GPTA), MCL 211.1 *et seq*. Petersen appeals by right.

On appeal, we hold that although the City levied a "special assessment" through adoption of a resolution, efforts to extend the term for payment of this assessment were invalid; consequently, the special assessment was extinguished by the foreclosure because there were no "future installments" owing at the time of foreclosure. We also conclude that postforeclosure efforts to revive the extinguished assessment either by contract or resolution were void.

Accordingly, we reverse the grant of summary disposition to defendants and remand the case for entry of judgment in Petersen's favor, thereby removing the liens on the property.

## I. FACTS

In our previous decision, we summarized the basic facts of this case as follows:

This case concerns real property located within the city. Starting in 2004, the city and the property owner, along with others, entered into various special assessment agreements relative to several infrastructure improvements that were to benefit the property for purposes of a planned unit development. These agreements, which were recorded and involved the property owner making installment payments to the city, indicated that the contractual obligations contained therein constituted covenants that ran with the land and bound all successors in title. The city commission adopted multiple resolutions associated with the agreements and prepared and confirmed special assessment rolls for the improvements. Eventually, the property owner failed to pay the special assessments, a tax foreclosure action was commenced, a judgment of foreclosure was entered, the property owner failed to redeem the property or appeal the judgment, and title vested absolutely in the county treasurer as the foreclosing governmental unit. Subsequently, at a tax foreclosure sale, the county treasurer conveyed the property to [Petersen] pursuant to a quitclaim deed. [*Petersen Fin*, 326 Mich App at 437.]

Procedurally, in 2016 Petersen filed the current action seeking declaratory judgment to the effect that certain assessments had been extinguished by the foreclosure judgment and that Petersen owned the property free and clear of any obligations. Relevant to the current appeal, in Count II of the complaint, Petersen specifically challenged the continued existence and validity of a voluntary special-assessment/development agreement (VSADA) and related resolutions. In Count IV of the complaint, Petersen challenged the validity of an amendment to the VSADA (the amended VSADA) and related resolutions.[1] Monetarily, the outstanding obligation on the special assessment challenged by Petersen totaled $403,620. Later, Petersen also added Count V, a claim for a refund in the amount of $23,421.13, which Petersen asserted it had paid toward the assessment.

Following an appeal to this Court and remand for further proceedings regarding Counts II and IV, the parties filed cross-motions for summary disposition; the trial court denied Petersen's motion for summary disposition while granting summary disposition to defendants under MCR 2.116(C)(8) and (I)(2). The trial court concluded that the City levied a valid special assessment and that future installments remained owing as a result of an extension of the payment terms. Accordingly, the trial court ruled that the assessment obligation survived foreclosure under MCL 211.78k(5)(c). Additionally, the trial court rejected Petersen's arguments that the amended VSADA, signed after the foreclosure judgment was entered but before the foreclosure sale, was

---

[1] In our previous decision, we concluded that Petersen was entitled to judgment on Counts I and III of the complaint, which concerned two other assessments. See *Petersen Fin*, 326 Mich App at 447.

void as against public policy and for lack of consideration.  In short, the trial court determined that the special assessment remained a valid encumbrance on the property.  Petersen now appeals.

## II.  ANALYSIS

On appeal, Petersen argues that the trial court erred by denying its motion for summary disposition and granting summary disposition in favor of defendants.  According to Petersen, the obligation in this case did not survive foreclosure under MCL 211.78k(5)(c) because there was no "special assessment," merely a contractual agreement.  And even if there were a special assessment, Petersen asserts that there were no "future installments" because efforts to extend the final deadline for payment of the special assessment were invalid, and the special assessment was, therefore, past due at the time of the foreclosure judgment.  On the basis of its assertion that the obligation was extinguished, Petersen also argues that postforeclosure efforts—while the property was owned by the Treasurer—to contractually revive the assessment were void as against public policy and for lack of consideration.  Petersen asks that we remand for entry of judgment in its favor, removing any liens from the property and ordering a monetary refund to Petersen.

In contrast, defendants contend that the trial court's decision should be affirmed. According to defendants, the City levied a valid special assessment that survived foreclosure under MCL 211.78k(5)(c).  Alternatively, defendants make the unpreserved argument that the obligation survived foreclosure as a "private deed restriction" under MCL 211.78k(5)(e).  In either case, defendants assert that the obligation survived foreclosure and that a postforeclosure contract between the City and the Treasurer, as well as an additional resolution adopted by the City, were valid and enforceable.  As an alternative basis to affirm, which was raised but not decided below, defendants also maintain that contractual waiver provisions preclude Petersen's challenges of the assessment.

### A.  STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition.  *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 507; 667 NW2d 379 (2003).  This Court also reviews de novo legal questions involving statutory interpretation, the construction of a contract, and the interpretation of a municipal resolution.  *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 140; 719 NW2d 553 (2006).

### B.  OVERVIEW OF THE GPTA

Under the GPTA, a governmental unit may seize and sell real property to "satisfy the unpaid delinquent real-property taxes as well as any interest, penalties, and fees associated with the foreclosure and sale of [the property]."  *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 474; 952 NW2d 434 (2020); see also MCL 211.78a(1).  In this context, the term "taxes" also includes "unpaid special assessments or other assessments that are due and payable up to and including the date of the foreclosure hearing . . . ."  MCL 211.78a(1).  Briefly stated, under the GPTA's tax-foreclosure process, "tax-delinquent properties are forfeited to the county treasurers; foreclosed on after a judicial foreclosure hearing; and, if not timely redeemed, sold at a public auction."  *Rafaeli, LLC*, 505 Mich at 442.

At issue in this case is the effect of a foreclosure on encumbrances to the property, such as a special assessment. When seeking foreclosure, the foreclosing governmental unit must file a petition of foreclosure in circuit court, requesting "that a judgment be entered vesting absolute title to each parcel of property in the foreclosing governmental unit, without right of redemption." MCL 211.78h(1). See also *Rafaeli, LLC*, 505 Mich at 445. After filing of the petition and a judicial foreclosure hearing, a judgment of foreclosure must be entered by March 30. *Rafaeli, LLC*, 505 Mich at 445. "Unless the delinquent taxes, interest, penalties, and fees are paid on or before March 31, fee simple title to the property vests absolutely in the foreclosing governmental unit without any further redemption rights available to the delinquent taxpayer." *Id*. (citations omitted). "Thereafter, the foreclosing governmental unit's title to the property is not subject to any recorded or unrecorded lien." *Id*. (citation omitted).

In more detail, MCL 211.78k sets forth the requirements of a judgment of foreclosure and generally proclaims that title vests in the foreclosing governmental unit:

> (5) The circuit court shall enter final judgment on a petition for foreclosure filed under section 78h at any time after the hearing under this section but not later than the March 30 immediately succeeding the hearing with the judgment effective on the March 31 immediately succeeding the hearing for uncontested cases or 10 days after the conclusion of the hearing for contested cases. All redemption rights to the property expire on the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case 21 days after the entry of a judgment foreclosing the property under this section. The circuit court's judgment must specify all of the following:
>
> * * *
>
> (b) That fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit, except as otherwise provided in subdivisions (c) and (e), without any further rights of redemption, if all forfeited delinquent taxes, interest, penalties, and fees, which delinquent taxes, interest, penalties, and fees may be reduced by the foreclosing governmental unit in accordance with section 78g(8), are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.
>
> (c) *That all liens against the property, including any lien for unpaid taxes or special assessments, except future installments of special assessments* and liens recorded by this state or the foreclosing governmental unit under the natural resources and environmental protection act, 1994 PA 451, MCL 324.101 to 324.90106, *are extinguished*, if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

(d) That, except as otherwise provided in subdivisions (c) and (e), the foreclosing governmental unit has good and marketable fee simple title to the property, if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

(e) That all existing recorded and unrecorded interests in that property are extinguished, *except* a visible or recorded easement or right-of-way, *private deed restrictions*, interests of a lessee or an assignee of an interest of a lessee under a recorded oil or gas lease, interests in oil or gas in that property that are owned by a person other than the owner of the surface that have been preserved as provided in section 1(3) of 1963 PA 42, MCL 554.291, interests in property assessable as personal property under section 8(g), or restrictions or other governmental interests imposed under the natural resources and environmental protection act, 1994 PA 451, MCL 324.101 to 324.90106, if all forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

\* \* \*

(6) Except as otherwise provided in subsection (5)(c) and (e), fee simple title to property set forth in a petition for foreclosure filed under section 78h on which forfeited delinquent taxes, interest, penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section, will vest absolutely in the foreclosing governmental unit, and the foreclosing governmental unit will have absolute title to the property . . . . The foreclosing governmental unit's title is not subject to any recorded or unrecorded lien and must not be stayed or held invalid except as provided in subsection (7) or (9). [Emphasis added.]

"After foreclosure, and assuming the state, city, village, township, or county where the property is located does not purchase the property, the GPTA provides for one or more auction sales beginning on the third Tuesday in July immediately succeeding the entry of the judgment of foreclosure." *Rafaeli, LLC*, 505 Mich at 446 (citation omitted).

## C. PREFORECLOSURE OBLIGATIONS

In this case, the property at issue was seized under the GPTA, and a judgment of foreclosure was entered for the satisfaction of all taxes, including special assessments due and payable up to the date of the foreclosure hearing. See MCL 211.78h; see also MCL 211.78a(1). Under MCL 211.78k(6), fee simple title vested absolutely in the Treasurer at the time of foreclosure, extinguishing all liens and existing interests in the property except as provided in MCL 211.78k(5)(c) and (e). As relevant to the arguments on appeal, MCL 211.78k(5)(c) and (e) provide

that "future installments of special assessments" and "private deed restrictions" are not extinguished by foreclosure. In light of these exceptions, the parties dispute whether Petersen, as the purchaser of the property at auction following foreclosure, became liable for the previous property owner's assessment obligation. There are three documents—(1) the VSADA, (2) Resolution 96-04, and (3) Resolution 50-14—relevant to this initial question whether there was a preforeclosure obligation relative to the property that survived foreclosure under MCL 211.78k.

## 1. THE VSADA

The first document, the VSADA, is a contract, and as a contract rather than a special assessment, the VSADA did not survive foreclosure under MCL 211.78k(5)(c), which only creates an exception for (1) future installments of (2) a special assessment.

The term "special assessment" refers to "a levy upon property within a specified district. Although it resembles a tax, a special assessment is not a tax." *Kadzban v City of Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993). Unlike a tax to raise revenue for general governmental purposes, "a special assessment can be seen as remunerative; it is a specific levy designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area." *Id*. Special assessments may be levied as permitted by statute, municipal charter, and applicable ordinances. *Wikman v City of Novi*, 413 Mich 617, 636-637; 322 NW2d 103 (1982). See also MCL 117.4d(1)(a). "They may be collected at the same time and in the same manner as other property taxes. If unpaid, they may become a lien on the property like other property taxes, or may be collected by an action against the owner of the property." *Wikman*, 413 Mich at 635.

Considering the definition of "special assessment" and the manner in which it must be levied, it is clear that the VSADA is simply a contract between the City and the previous property owners. It is not a special assessment levied in accordance with the statutes, municipal charter, and ordinances that govern special assessments in Kentwood. On appeal, in disputing the assertion that foreclosure extinguished the VSADA under MCL 211.78k(5)(c), defendants emphasize that contracts between a governmental entity and a property owner regarding payment for improvements to the property are valid and enforceable. See *Grosse Ile Twp v New York Indemnity Co*, 260 Mich 643, 646; 245 NW 791 (1932). Certainly such a contract may be valid and enforceable. See *id*. Nonetheless, it does not follow that a contractual obligation to pay for property improvements constitutes a "special assessment," i.e., a levy upon property within a specified district to recover costs for improvements benefiting the property as permitted by statute, municipal charter, and applicable ordinances. See *Kadzban*, 442 Mich at 500; *Wikman*, 413 Mich at 636-637. To survive foreclosure under MCL 211.78k(5)(c), the obligation in question must be a "special assessment." Because the VSADA was not a special assessment, it did not survive foreclosure under MCL 211.78k(5)(c)'s exception for future installments of a special assessment.

Alternatively, defendants argue that the VSADA constituted a "private deed restriction" that survived foreclosure under MCL 211.78k(5)(e). The VSADA contained a provision indicating that it would be recorded with the Register of Deeds and that the obligations under the VSADA were "covenants that run with the land" and "bind all successors in title." Relying on *Lakes of the North Ass'n v TWIGA Ltd Partnership*, 241 Mich App 91; 614 NW2d 682 (2000), defendants contend that the VSADA's creation of an assessment as a covenant that ran with the land amounted to a private deed restriction that survived foreclosure under MCL 211.78k(5)(e).

This argument is, however, unpreserved. See *In re Application of Int'l Transmission Co*, 304 Mich App 561, 566-567; 847 NW2d 684 (2014).[2] Further, although defendants offer the conclusory assertion on appeal that covenants running with the land were created by the VSADA, defendants fail to address the requirements for establishing covenants that run with the land.[3] By failing to brief the merits of the issue, defendants have abandoned the claim that the VSADA constituted a covenant running with the land that survived foreclosure as a private deed restriction under MCL 211.78k(5)(e). See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Moreover, defendants' argument lacks merit. As stated in MCL 211.78k(5)(e), "all existing recorded and unrecorded interests in th[e] property are extinguished, except . . . private deed restrictions" and other exceptions not relevant to this case. In general, "[a] deed restriction represents a contract between the buyer and the seller of property." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007). In *Lakes of the North*, 241 Mich App at 93-94, 100, this Court more specifically concluded that for purposes of MCL 211.78k(5)(e),[4] private deed restrictions encompassed a maintenance assessment

---

[2] In a footnote in a summary disposition brief, defendants made a cursory reference to MCL 211.78k(5)(e), stating, "Although Petersen's complaint focuses on future installments of special assessments, the City preserves the right to enforce any other obligation set forth in the VSADA or Amendment because such properly recorded private deed restrictions are not extinguished by foreclosure. MCL 211.78k[5](e)." Although purporting to have preserved the issue, defendants did not develop an argument related to MCL 211.78k(5)(e), and defendants did not ask the trial court for a ruling on this question. As a result, the trial court did not address or decide the issue. On these facts, defendants' perfunctory citation of MCL 211.78k(5)(e) was insufficient to preserve defendants' arguments regarding the statutory provision. See *Int'l Transmission Co*, 304 Mich App at 566-567 (finding that "cursory reference" to an issue in the footnote of a trial brief without "actually" making an argument was insufficient to preserve issue for appeal).

[3] This Court has explained:

> The essentials of such a covenant (i.e., a covenant running with the land) have been stated to be that the grantor and grantee must have intended that the covenant run with the land; the covenant must affect or concern the land with which it runs; and there must be privity of estate between the party claiming the benefit and the party who rests under the burden. [*Greenspan v Rehberg*, 56 Mich App 310, 320-321; 224 NW2d 67 (1974) (quotation marks and citation omitted).]

[4] Much of the analysis in *Lakes of the North*, 241 Mich App at 96-100, involved former MCL 211.67, which governed the case and provided that "encumbrances" on property were extinguished by foreclosure. The GPTA, however, had been recently amended, replacing MCL 211.67 with MCL 211.78k, and the Court in *Lakes of the North* decided to also take note of the "private deed restriction" language in MCL 211.78k(5)(e). The comments on private deed restrictions were thus obiter dicta. See *Wold Architects & Engineers v Strat*, 474 Mich 223, 232 n 3; 713 NW2d 750 (2006) ("Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however

established by a developer pursuant to a restrictive covenant that was recorded when the developer owned all of the lots in the subdivision. Given the panel's conclusion that the assessment constituted a private deed restriction, this Court determined that the obligation to pay prospective maintenance assessments survived foreclosure. *Lakes of the North*, 241 Mich App at 99-100. We note that the covenant in *Lakes of the North* specifically provided that " '[t]he developer being the owner of all the properties hereby covenants and each subsequent owner by acceptance of a land contract and/or a deed therefor, whether or not it shall be expressed in any such deed or contract is deemed to covenant and agree to pay to the Association . . . .' " *Id.* at 94.

Analogizing the special assessment here to the maintenance assessment in *Lakes of the North*, defendants argue that the obligation to pay the special assessment, as stated in the VSADA, constituted a covenant, i.e., a private deed restriction, that survived foreclosure under MCL 211.78k(5)(e). Simply put, we conclude that the VSADA did not constitute or include a private deed restriction. The VSADA was a contract, effectively containing a condition precedent to the developers' obligation to perform, which condition did occur by way of resolution, with a *public* entity as one of the parties to the contract and absent any entanglement with or connection to a *deed*. There was no document of conveyance associated with the VSADA, unlike in *Lakes of the North* where the maintenance-assessment covenants arose and became enforceable upon the purchase of real property by land contract or deed. The dicta in *Lakes of the North* provides no aid to defendants' position.

## 2. RESOLUTION 96-04

Although the VSADA did not create an assessment, the City Commission established a special assessment with the adoption of Resolution 96-04. Chapter X of the Kentwood City Charter authorized the City Commission to enact special assessments for public improvements, and Chapter 50 of the Kentwood City Ordinances (KCO) provided the procedures for levying a special assessment by resolution of the City Commission. In keeping with this authority, the City Commission adopted Resolution 96-04 to recover the costs for public improvements that conferred a peculiar benefit on the properties in the Ravines special-assessment district. See *Kadzban*, 442 Mich at 500. Resolution 96-04 established the special-assessment-district roll, set the amount and terms of the special assessment, and apportioned the special assessment among the parcels in the special-assessment district. In short, acting within its authority as provided by law, the City Commission adopted Resolution 96-04. In so doing, it levied a special assessment.

A special assessment is presumed to be valid. See *Kane v Williamstown Twp*, 301 Mich App 582, 586; 836 NW2d 868 (2013). And Petersen offered nothing in the trial court, or on appeal, to overcome this presumption or to demonstrate that Resolution 96-04 was invalid. In particular, Petersen mainly challenges the validity of the assessment on the basis that the obligation created by Resolution 96-04 could not actually be a special assessment because the City and the developers first entered into a contract—the VSADA—regarding the proposed improvements. But Petersen offers no authority for the proposition that the City cannot enter into a contract and also enact a valid special assessment. Clearly, the City has the authority to enter into contracts, see *Grosse Ile*

---

illuminating, but obiter dicta and lack the force of an adjudication.") (quotation marks and citations omitted).

-8-

*Twp*, 260 Mich at 646, and the City also has the power to levy special assessments, see *Wikman*, 413 Mich at 636-637. Caselaw also demonstrates that a special assessment created by resolution is not invalid simply because there also exists a contract relating to the same improvements encompassed by the special assessment. See, e.g., *Thayer Lumber Co v Muskegon*, 157 Mich 424, 430-432; 122 NW 189 (1909) (finding a reassessment involving a resolution that specifically referred to a contract to be valid). In sum, there is no merit to Petersen's assertion that in light of the VSADA, Resolution 96-04 somehow created only a contractual obligation rather than a special assessment.[5]

Instead, Resolution 96-04 created a "special assessment," and whether this obligation survived foreclosure under MCL 211.78k(5)(c) requires a determination whether there remained "future installments" of the special assessment. Relevant to this "future installment" question, Resolution 96-04 set a 10-year term for the special assessment. Annual interest-only payments were due beginning in September 2005, and the final balloon payment, including principal and interest, was due in September 2014. The foreclosure in this case occurred in March 2015, which was *after* the final payment set by Resolution 96-04 came due. If Resolution 96-04 controlled the time for payment of the special assessment, it is clear that there was no "future installment" for purposes of MCL 211.78k(5)(c) because the assessment came due in full in September 2014, before the March 2015 foreclosure.

### 3. RESOLUTION 50-14

In our view, the pivotal question in this case is whether the City properly adopted Resolution 50-14, which purported to extend the final payment deadline from September 2014 to September 2015. The City Commission adopted Resolution 50-14 in July 2014, before the final payment came due in September 2014 and before the foreclosure in March 2015. Accordingly, if Resolution 50-14 validly extended the payment deadline to September 2015, then at the time of the foreclosure in March 2015 there remained a "future installment" on the special assessment.

The City Commission's authority relating to special assessments is defined by statute, ordinance, and city charter. See *Wikman*, 413 Mich at 636-637; see also *Whitney v Common Council of the Village of Hudson*, 69 Mich 189, 197; 37 NW 184 (1888) ("That the action of the common council must be within the power conferred; and when the mode is prescribed, either by charter or ordinance, that mode constitutes the measure of the power."). As noted, the Kentwood City Charter and KCO authorized the City Commission to adopt resolutions to levy special assessments. The procedures provided for a hearing, review of the assessment roll and changes thereto by the City Commission, and, ultimately, confirmation of the assessment roll. See KCO,

---

[5] In challenging the special assessment created by Resolution 96-04, Petersen, relying on an opinion from the Office of the Attorney General, OAG, 2001-2002, No. 7110 (June 17, 2002), also makes a cursory argument that the resolution could not have established a special assessment because special assessments are not recorded and the VSADA was recorded. In making this argument, Petersen again conflates the VSADA and Resolution 96-04. Even if a special assessment cannot be recorded, there is no indication that Resolution 96-04 was recorded. The existence and recording of the VSADA does not alter the validity of the special assessment created by Resolution 96-04.

Chapter 50. Notably, following the City Commission's review and any changes to the assessment roll that the Commission might make, KCO, § 50.10 provided for the City Commission's examination and confirmation of the assessment roll, providing as follows:

> The city commission shall meet at the time and place designated for the review of such special assessment roll, and at such meeting, or a proper adjournment thereof, shall consider all objections thereto submitted in writing. The city commission may correct such roll as to any special assessment or description of any lot or parcel of land or other errors appearing therein, or it may by resolution annul such assessment roll and direct that new proceedings be instituted. The same proceedings shall be followed in the making of the new roll as in the making of the original roll. If, after hearing all objections and making a record of such changes as the city commission deems justified, the city commission determines that it is satisfied with the special assessment roll and that assessments are in proportion to benefits received, it shall thereupon pass a resolution reciting such determinations, confirming such roll, placing it on file in the office of the clerk and directing the clerk to attach his warrant to a certified copy thereof within ten days, therein commanding the assessor to spread, and the treasurer to collect, the various sums and amounts appearing thereon as directed by the city commission. Such roll shall have the date of confirmation endorsed thereon and *shall, from that date, be final and conclusive for the purpose of the improvement to which it applies*, subject only to adjustment to conform to the actual cost of the improvement, as provided in section 50-14. [Emphasis added.]

As discussed, a valid special assessment was created by Resolution 96-04. Under KCO, § 50.10, once confirmed by the City Commission, the special assessment established by Resolution 96-04 became "final and conclusive" for purposes of the improvements related to the property in question. Once an assessment becomes final, a taxing authority, like a taxpayer, must abide by the rules and procedures applicable for challenging the assessment. See *Detroit Edison Co v Detroit*, 297 Mich 583, 591; 298 NW 290 (1941) ("Any action attacking the assessment, whether by the taxpayer, the taxing authorities, or the State tax commission, must be seasonably taken."). But in this case, defendants have not identified any legal basis for altering the payment terms of the assessment.

We note that the KCO makes provision for reassessment of or adjustments to a special assessment in particular circumstances, but none of the circumstances applied to the special assessment created by Resolution 96-04. For example, under KCO, § 50.14, adjustments can be made to increase an assessment or issue refunds if, after completion of the improvements, it is determined that the actual costs differed from the amount of the special assessment. But this provision did not apply to Resolution 50-14, which did not alter the amount of the special assessment to conform to actual costs. Alternatively, KCO, § 50.10 allows for the correction of errors or the annulment of the roll *before* confirmation of the roll; it does not provide for alterations after the assessment becomes final and conclusive. Finally, KCO, § 50.16 allows for "a new assessment" if the City Commission deems a special assessment "invalid or defective for any reason whatsoever" or if a court finds the assessment to be "illegal for any reason whatsoever." But even when KCO, § 50.16 applies, it requires that "[a]ll proceedings on such reassessment and for the collection thereof shall be made in the manner as provided for the original assessment."

The procedures for confirming a special assessment roll were *not* followed when adopting Resolution 50-14. To the contrary, Resolution 50-14 provided that it was made "[w]ithout re-confirming" the special assessment roll. In short, the KCO and City Charter, while generally authorizing the City Commission to establish a special assessment, did not provide authority for the City Commission's adoption of Resolution 50-14 to amend the terms of the special assessment once it became "final and conclusive" under KCO, § 50.10.[6] Cf. *Hudson Motor Car Co v Detroit*, 282 Mich 69, 81; 275 NW 770 (1937) ("After the tax rolls have been passed upon by local boards of review and are properly certified by them, no change may be made therein by the local board of review of by any local assessing officer.").

Rather than identify a statute or a provision in the City Charter or KCO that would have supported the City Commission's adoption of Resolution 50-14, the City argues on appeal that the VSADA authorized Resolution 50-14 because the VSADA indicated that the City Commission had discretion to set the terms of the special assessment. But, as discussed, the City Commission's authority to establish the special assessment did not derive from contract; rather, the power derived from statute, the municipal charter, and applicable ordinances. See *Wikman*, 413 Mich at 636-637. Indeed, the VSADA expressly acknowledged that "consistent with" the City's ordinances, the special assessment would be "determined by resolution of the City Commission in its discretion," and the VSADA did not purport to alter that discretion. In other words, the VSADA did not provide any independent authority for Resolution 50-14; instead, it merely recognized that the City Commission could exercise its discretion "consistent with" the City's ordinances. The fact remains that statutes, the City Charter, and the KCO governed the lawfulness of Resolution 50-14, and defendants have not advanced an argument under those authorities to justify the modification of the special assessment's terms after the special assessment became final and conclusive.

In sum, absent a legal basis for the adoption of Resolution 50-14, defendants' arguments that the City Commission legally extended the term of the special assessment lack merit. Without the extension in Resolution 50-14, the special assessment validly created by Resolution 96-04 came due in September 2014. Accordingly, all installments of the special assessment were due and payable before the foreclosure in March 2015. See MCL 211.78a(1). Thus, because there was no "future installment" of a "special assessment" owing at the time of foreclosure, the assessment did not survive foreclosure under MCL 211.78k(5)(c). The special assessment was extinguished, and the property passed to the Treasurer free from any assessment obligation. See MCL 211.75k(5).

---

[6] Under the GPTA, in specified circumstances, to avoid foreclosure, a foreclosing governmental unit may enter into a payment plan or a foreclosure agreement. See generally MCL 211.78q. But it does not appear that Resolution 50-14 constituted a plan under MCL 211.78q. And defendants do not even refer to MCL 211.78q, let alone present an argument under the statute. Indeed, it appears that MCL 211.78q would have been the appropriate statute to invoke for purposes of altering the assessment payment plan for the financially distressed developers. Defendants have not otherwise identified, nor are we aware of, any statutory authority that would have permitted the City Commission to modify the special assessment after confirmation of the assessment roll.

### D. POSTFORECLOSURE OBLIGATIONS

Following the foreclosure and while the Treasurer held title to the property, the City and the Treasurer entered into the amended VSADA, which sought to further extend the payment term for the now-extinguished special assessment to 2024. In addition, the City also adopted Resolution 31-15,[7] which likewise sought to extend the payment deadline on the assessment to 2024. Given the extinguishment of the special assessment, Petersen argues on appeal that the amended VSADA was void as against public policy and for lack of consideration. We agree and further conclude that Resolution 31-15 was invalid.

It is a "bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003).

> [T]he determination of Michigan's public policy is not merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. In ascertaining the parameters of our public policy, [the Court] must look to policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. [*Rory v Continental Ins Co*, 473 Mich 457, 470-471; 703 NW2d 23 (2005) (quotation marks and citations omitted).]

To warrant invalidating a contract, the public policy must be "explicit," "well defined[,] and dominant." *Terrien v Zwit*, 467 Mich 56, 67-68; 648 NW2d 602 (2002) (quotation marks and citation omitted).

In this case, the GPTA as well as judicial decisions determining the effect of a tax foreclosure provide very definite rules that special assessments, except for future installments, are extinguished by foreclosure and that, once extinguished, the obligations cannot be revived by the taxing authority following foreclosure. To begin with, the fact that special assessments, except future installments, are extinguished by foreclosure is expressly stated in MCL 211.78k(5)(c). The GPTA also provides that as a result of foreclosure, fee simple title to the property vests "absolutely" in the foreclosing governmental unit, free from any recorded or unrecorded lien. MCL 211.78k(6). The foreclosure judgment encompasses "the forfeited unpaid delinquent taxes, interest, penalties, and fees due on each parcel of property," including "unpaid special assessments or other assessments that are due and payable up to and including the date of the foreclosure hearing." MCL 211.78k(5)(a); MCL 211.78a(1). Following foreclosure, the property may be sold by auction, and the proceeds are placed in an account for distribution by the foreclosing governmental unit in a manner provided by the GPTA, with the first priority being "to reimburse the delinquent tax revolving fund for the full amount of unpaid taxes, interest, and fees owed on the property." *Rafaeli, LLC*, 505 Mich at 446-447. In other words, the statutory scheme provides

---

[7] Resolution 31-15 does not appear to be part of the lower court record. Nevertheless, because it involves a public record, we may take judicial notice of it. See *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015); MRE 201 and 202.

for the extinguishment of a special assessment, and the taxing authority's sole means to recoup any portion of the delinquent assessment is provided for through reimbursement from the sale proceeds, *not* by again encumbering the property with an extinguished obligation.

The Legislature is empowered to set the terms for tax-foreclosure sales. See *Baker v State Land Office Bd*, 294 Mich 587, 602; 293 NW 763 (1940). And, as stated in MCL 211.78(1), by enacting the tax-foreclosure procedures set forth in the GPTA, the Legislature recognized "a continuing need to strengthen and revitalize the economy of this state and its municipalities by encouraging the efficient and expeditious return to productive use of property returned for delinquent taxes." The Michigan Supreme Court has similarly explained that foreclosure and sale for delinquent taxes serve "to secure a portion of the unpaid taxes, rather than nothing, and to restore lands to a taxpaying basis, instead of supinely allowing them to accumulate tax delinquencies with no hope of ever recovering them." See *Baker*, 294 Mich at 606. In this context, "the purpose for canceling past due taxes, assessments, and liens against foreclosed property is to attract prospective buyers and ultimately restore the property to the tax rolls." *Lakes of the North*, 241 Mich App at 98 (quotation marks and citation omitted). With regard to extinguished obligations, we note that it is the taxing unit that must bear any loss associated with cancellation of past-due taxes, assessments, and liens. *Wayne Co Chief Executive v Mayor of Detroit*, 211 Mich App 243, 244; 535 NW2d 199 (1995).

Notably, it is well settled by caselaw that once a special assessment has been extinguished by foreclosure, a governmental entity lacks the power to revive it. See *Wood v Village of Rockwood*, 328 Mich 507, 512; 44 NW2d 163 (1950); *Clark v Royal Oak*, 325 Mich 298, 310; 38 NW2d 413 (1949); *Keefe v Drain Comm'r of Oakland Co*, 306 Mich 503, 511-512; 11 NW2d 220 (1943), aff'd 322 US 393 (1944); *Muni Investors Ass'n v Birmingham*, 298 Mich 314, 325; 299 NW 90 (1941), aff'd 316 US 153 (1942). As recognized by the Michigan Supreme Court, to allow reassessment following foreclosure would defeat the purpose of the "remedial" tax-foreclosure legislation, and it "would once again give rise to the vicious circle of assessment based upon inflated valuation; refusal or inability of the owner to pay; followed by a sale of the premises pursuant to the State's sovereign power of enforcing the collection of taxes." *Muni Investors*, 298 Mich at 325. Indeed, the possibility of restoring foreclosed property "to the tax rolls would be considerably lessened because prospective buyers might well hesitate to assume such an obligation." *Keefe*, 306 Mich at 512. For these reasons, to effectuate the "obvious intent and purpose of the legislature to relieve owners from the weight of accumulated obligations," *Muni Investors*, 298 Mich at 325, as a result of a tax foreclosure, the property is "freed of the possibility of further assessments for benefits to the land by public improvements made prior to the [foreclosing governmental unit's] acquiring title," *Clark*, 325 Mich at 310.

In this case, recognizing that the special assessment created by Resolution 96-04 was extinguished by foreclosure under MCL 211.78k(5)(c), it follows that the amended VSADA effectively sought to extend or revive an extinguished assessment. But because the City cannot legally revive an extinguished assessment, see *Clark*, 325 Mich at 310, the amended VSADA must be declared void as against public policy. That is, by entering into a contract to extend the terms of an extinguished special assessment, the City violated the Legislature's mandate for the extinguishment of special assessments under MCL 211.78k(5)(c). The City in effect sought to contravene decisions from the Michigan Supreme Court expressly recognizing that an extinguished assessment may not be revived following foreclosure. The legal reality at this

-13-

juncture is that the extinguished special assessment could not lawfully be revived by any means. The City's attempt to contract for the unlawful revival of an extinguished special assessment was therefore void as a violation of public policy. See *Rory*, 473 Mich at 470-471.

In arguing to the contrary, defendants make several arguments. First, they assert that there was no violation of public policy because the special assessment in fact survived foreclosure under MCL 211.78k(5)(c). This argument lacks merit for the reasons already discussed. Second, defendants note that in addition to the amended VSADA, the City Commission adopted Resolution 31-15 in June 2015. Like the amended VSADA, Resolution 31-15 extended the term of the special assessment through September 2024. Resolution 31-15, however, does not aid defendants' position because the special assessment did not survive foreclosure and the fact remains that the City could not reassess the property. See *Clark*, 325 Mich at 310, and cases therein. Third, defendants emphasize that the City is a home-rule city with generally broad powers to contract and adopt resolutions regarding municipal concerns. That may be, but the City's powers are constitutionally limited by laws enacted by the Legislature.[8] See *Wayne Co Chief Executive*, 211 Mich App at 245, citing Const 1963, art 7, §§ 21-22. In other words, the fact that one of the contracting parties is a home-rule city does not excuse the parties from adhering to the laws of this state, nor does it allow the City to enter into contracts in violation of public policy. Instead, as a contract to revive an extinguished special assessment contrary to the directives and public policy embodied in the GPTA, the amended VSADA was void. See *Rory*, 473 Mich at 470-471.

## E.  WAIVERS

On appeal, defendants also assert that the trial court's decision should be affirmed because, regardless of the merits of Petersen's arguments, Petersen may not challenge the validity of the special assessment at this time because both the VSADA and amended VSADA contained waiver provisions in which the property owners agreed to waive challenges to the special assessment. We disagree.

Relevant to defendants' arguments, the VSADA provided:

The Owner represents, covenants, and agrees that the property will benefit and be enhanced in value by at least the amount to be specially assessed . . . . The Owner hereby releases, waives, and relinquishes, on behalf of itself, its successors, and assigns any claims it may have against the City, its officers or employees based on or arising out of the nature of the special assessment proceedings provided for herein, any defects in notice or other procedure associated with the special assessments, or whether the owner contracted infrastructure improvements proportionately increase (relative to the amount of the special assessment) the value of the 44th LLC Property.

---

[8] Indeed, the amended VSADA in fact recognized that the power to extend the special assessment would be exercised "consistent with" the KCO.

-14-

Elsewhere, the VSADA stated: "The City's willingness to proceed with the establishment of a special assessment district is in reliance on the Owner's request for the same and agreement to waive any challenges to the special assessment and special assessment roll."

Even if we set aside the question whether the VSADA survived foreclosure (or whether the amended VSADA was void), defendants' reliance on the waiver provisions is misplaced in light of this Court's decision in *Petersen* regarding the nature of Petersen's claims at issue in this case. This Court observed that the case fundamentally involves "a legal question regarding the effect of a tax foreclosure judgment on overdue special assessment installment payments; it is a pure issue of statutory construction." *Petersen Fin LLC*, 326 Mich App at 444. In other words:

> [Petersen] is not challenging the factual basis or the amount of the underlying assessments arising from the special assessment agreements; rather, [Petersen] takes issue with the continuing enforceability of the assessments, at least in regard to outstanding past due installments, in light of the tax foreclosure, arguing that past debt was extinguished by the judgment of foreclosure. [*Id*. at 445-446.]

Resolution of that issue required "construction of the GPTA and the law of tax foreclosure, which has nothing to do with the factual underpinnings of the special assessment." *Id*. at 446.

In *Petersen*, we discussed the nature of Petersen's claims and concluded that the case was not within the exclusive jurisdiction of the Tax Tribunal. *Id*. at 436. But, given what is covered by the contractual waiver provisions, this same reasoning supports the conclusion that Petersen's challenges did not fall within the ambit of the contractual waiver provisions. This is so because Petersen's claims did not involve a challenge to the special-assessment terms or amounts; rather, they pertained to the continued enforceability of the special assessment under MCL 211.78k(5)(c) in light of the foreclosure. Such arguments were not claims regarding notice or special-assessment procedures, the amount of the assessment, or the benefit the property received from the improvements. Instead, they were assertions that MCL 211.78k(5)(c) extinguished the special assessment. As written, the waiver provisions did not encompass claims under MCL 211.78k(5)(c). Indeed, in our view, an attempt to contractually prevent extinguishment of a special assessment contrary to MCL 211.78k(5)(c) would be considered void as against public policy. See *Rory*, 473 Mich at 470-471. Defendants' waiver arguments lack merit.

## F. REFUND REQUEST

Finally, Petersen asserts that the trial court erred by failing to order a refund in the amount of $23,421.13 which Petersen had paid toward the assessment. The trial court did not substantively reach this issue on its merits in light of the court's ruling that the special assessment survived foreclosure. We conclude that the appropriate course of action is to have the trial court address the issue in the first instance, now in the context of a judgment entered in Petersen's favor and that extinguishes the assessment.

## III. CONCLUSION

In sum, although the City levied a valid special assessment with the passage of Resolution 96-04, its attempts to extend the payment deadline were invalid, and there was no legitimate future installment of a special assessment owing at the time of foreclosure. Accordingly, the special

assessment was extinguished by foreclosure under MCL 211.78k(5)(c), and once extinguished, the assessment could not be revived by contract or resolution. The trial court, therefore, erred by concluding that the special assessment survived foreclosure. As a result, we reverse the grant of summary disposition to defendants as well as the denial of summary disposition to Petersen with respect to the continued existence of a special assessment. We remand for entry of judgment in Petersen's favor, thereby removing any liens or encumbrances on the property related to the special assessment.[9] On remand, the trial court shall also entertain Petersen's request for a refund.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Petersen may tax costs pursuant to MCR 7.219.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Anica Letica

---

[9] Given our resolution of these issues, we find it unnecessary to address Petersen's remaining arguments regarding summary disposition and law of the case.

-16-